THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ A. SOSA DÍAZ, Defendant and Appellant.

Nos. CR-63-374, CR-63-375.        Decided June 16, 1964.

*Guillermo Bird Martínez* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for The People.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

In answer to a complaint concerning an accident between two motor vehicles, three policemen went to a place across from the fire station in the town of Ceiba. Upon arriving they noticed that appellant, José A. Sosa Díaz, was under the influence of alcoholic beverages, for which reason he was detained and taken to police headquarters by officer Cecilio Ortiz. Another policeman, named Modesto García, remained "taking care" of the automobile. He was not present during, nor did he participate in, the investigation. Returning to the site of the accident after the investigation had been completed, "policeman Román opened a door whose window was rolled way up, wide open, unlocked, and found

under the seat of the car, a small blank-cartridge gun converted into a death-dealing revolver."[1] García made sure that no private citizen interfered with the vehicle until policeman Román made the search and found the weapon.

Policeman Román testified that the purpose of his search was "to see whether there was any intoxicating liquor or something under the seat of the car" because appellant was intoxicated and for that reason had been arrested.[2] The following excerpt from the testimony of said witness is of the utmost importance:

"Q. And while you looked in . . . searched that automobile, *where was the defendant?*

A. *At headquarters, we had him detained at headquarters.*

Q. That is, he was already at headquarters and the automobile was over here in another street, far from headquarters?

A. On Las Flores Street.

Q. Was the automobile by itself?

A. No, we had left another policeman there.

Q. *But wasn't the defendant there?*

A. *No, the defendant was not there.*" (Italics ours.)

This in brief is the evidence—together with the presentation of the weapon in evidence—heard by the trial judge to find Sosa Díaz guilty of violating §§ 6 and 7 of the Weapons Law, 25 L.P.R.A. §§ 416 and 417, the violations consisting in having, possessing and carrying a firearm without having a license therefor issued pursuant to the provisions of law. We deem it proper to indicate that during the

---

[1] Subdivision (b) of § 44 of the Weapons Law, 25 L.P.R.A. § 454, defines a firearm as "any weapon by whatever name known capable of discharging one or more ammunitions through the expanding action of gases."

A senate bill substituting S.B. No. 296, intended to prohibit the bearing, carrying, transportation, or possession of weapons, instruments, or gadgets usually known as blank-cartridge weapons is pending approval by the Governor.

[2] Appellant was convicted of a violation of § 5-801 of the Vehicle and Traffic Law, 9 L.P.R.A. § 1041, for driving a motor vehicle under the influence of intoxicating liquor.

610

trial defendant objected to the admission of the weapon in evidence.

·The convictions cannot. prevail.

■ Section 10 of Art. II of the Constitution of the Commonwealth of Puerto Rico prescribes that "the right of the people to be secure in their persons, houses, papers and effects against *unreasonable* searches and seizures shall not be violated." This guarantee protects citizens from a search which, although legal, is unreasonable.[3]

■ Where a search is incidental to an arrest, peace officers may make the search without first procuring a search warrant. *United States* v. *Rabinowitz*, 339 U.S. 56 (1950). Already in *Agnello* v. *United States*, 269 U.S. 20, 30 (1925), the Federal Supreme Court had held that "The right without a search warrant *contemporaneously* to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted." (Italics ours.) In Puerto Rico, see, among others, *People* v. *Luciano*, 83 P.R.R. 395 (1961); *People* v. *Sánchez*, 83 P.R.R. 393 (1961); *People* v. *Vargas*, 80 P.R.R. 285 (1958); *People* v. *Soto*, 77 P.R.R. 193 (1954); *People* v. *Pieras*, 72 P.R.R. 728 (1951). This constitutional protection has extended specifically to include vehicles. *Brinegar* v. *United States*, 338 U.S. 160 (1949); *Carroll* v. *United States*, 267 U.S. 132 (1925). Now, as we have indicated, the fact that a search may be legal—as it allegedly is in this case, on the

---

[3] In objecting to an amendment to add "illegal" after "unreasonable", in connection with searches, delegate ·Mr. Reyes Delgado stated that "Against illegality, there is nothing to be guaranteed . . . . That is why the guarantee is against unreasonable searches, seizures, because there is a margin of discretion in that, and the courts must decide whether or not the action was reasonable." *Diario de Sesiones de la Convención Constituyente* (Equity ed.) vol. 3, p. 1566.

ground that it was an incident to a valid arrest—[4] does not necessarily mean that it is reasonable. In *Trupiano* v. *United States*, 334 U.S. 699, 708 (1948), it was stated that "A search or seizure without a warrant as an incident to a lawful arrest has always been considered to be a strictly limited right. It grows out of the inherent necessities of the situation at the time of the arrest. But there must be something more in the way of necessity than merely a lawful arrest. The mere fact that there is a valid arrest does not *ipso facto* legalize a search or seizure without a warrant."[5]

■ The most recent statement of the Federal Supreme Court appears in the opinion delivered scarcely a few months ago—March 23, 1964—in *Preston* v. *United States*, 376 U.S. 364, which, because of its importance insofar as the definition of the term "reasonableness of the arrest" is concerned, we copy, almost in its entirety:

"Petitioner and three others were convicted in the United States District Court for the Eastern District of Kentucky on a charge of conspiracy to rob a . . . bank in violation of 18 U.S.C. § 2113, the conviction having been based largely on evidence obtained by the search of a motorcar. The Court of Appeals for the Sixth Circuit affirmed, rejecting the contentions, timely made in the trial and appellate courts, that both the original arrest, on a charge of vagrancy, and the subsequent search and seizure had violated the Fourth Amendment. [Citation.] We granted certiorari. [Citation.] In the view we take of the case, we need not decide whether the arrest was valid, since we hold that the search and seizure was not.

---

[4] Section 5-1121 (c) of the Vehicle and Traffic Law, 9 L.P.R.A. § 1151 (c); *People* v. *Sánchez*, 83 P.R.R. 393 (1961); *Search and Seizure Incident to Traffic Violations*, 14 Hastings L.J. 459 (1963); *Interference with the Right to Free Movement*; *Stopping and Search of Vehicles*, 51 Calif. L. Rev. 907 (1963). *Cf. People* v. *Zeigler*, 100 N.W.2d 456 (Mich. 1960); *People* v. *Molarius*, 303 P.2d 350 (Cal. 1956); *Courington* v. *State*, 74 So.2d 652 (Fla. 1954).

[5] Although *Trupiano* was reversed in *Rabinowitz*, *supra*, this statement not only did not lose any effect, but was ratified at pp. 65 and 66 of the opinion delivered in the latter case.

"The police of Newport, Kentucky, received a telephone complaint at 3 o'clock one morning that 'three suspicious men acting suspiciously' had been seated in a motorcar parked in a business district since 10 o'clock the evening before. Four policemen straightaway went to the place where the car was parked and found petitioner and two companions. The officers asked the three men why they were parked there, but the men gave answers which the officers testified were unsatisfactory and evasive. . . . The officers arrested the three men for vagrancy, searched them for weapons, and took them to police headquarters. The car, which had not been searched at the time of the arrest, was driven by an officer to the station, from which it was towed to a garage. Soon after the men had been booked at the station, some of the police officers went to the garage to search the car and found two loaded revolvers in the glove compartment. They were unable to open the trunk and returned to the station, where a detective told one of the officers to go back and try to get into the trunk. The officer did so, was able to enter the trunk through the back seat of the car, and in the trunk found caps, women's stockings (one with mouth and eye holes), rope, pillow slips, an illegally manufactured license plate equipped to be snapped over another plate, and other items. After the search, one of petitioner's companions confessed that he and two others—he did not name petitioner—intended to rob a bank in Berry, Kentucky, a town about 51 miles from Newport. At this, the police called the Federal Bureau of Investigation into the case and turned over to the Bureau the articles found in the car. It was the use of these articles, over timely objections, which raised the Fourth Amendment question we here consider.

"The amendment provides:

'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'

"The question whether evidence obtained by state officers and used against a defendant in a federal trial was obtained by unreasonable search and seizure is to be judged as if the search and seizure had been made by federal officers. [Citation.] Our

cases make it clear that searches of motorcars must meet the test of reasonableness under the Fourth Amendment before evidence obtained as a result of such searches is admissible. [Citations.] Common sense dictates, of course, that questions involving searches of motorcars or other things readily moved cannot be treated as identical to questions arising out of searches of fixed structures like houses. For this reason, what may be an unreasonable search of a house may be reasonable in the case of a motorcar. [Citation.] But even in the case of motorcars, the test still is, was the search unreasonable. Therefore we must inquire whether the facts of this case are such as to fall within any of the exceptions to the constitutional rule that a search warrant must be had before a search may be made.

"It is argued that the search and seizure was justified as incidental to a lawful arrest. Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. [Citations.] This right to search and seize without a search warrant extends to things under the accused's immediate control, [citation] and, to an extent depending on the circumstances of the case, to the place where he is arrested [citations]. The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest. [Citation.] Here, we may assume, as the Government urges, that, either because the arrests were valid or because the police had probable cause to think the car stolen, the police had the right to search the car when they first came on the scene. But this does not decide the question of the reasonableness of a search at a later time and at another place. [Citation.] The search of the car was not undertaken until petitioner and his companions had been arrested and taken in custody to the police station and the car had been towed to the garage. At this point there was no danger that any of the

men arrested could have used any weapons in the car or could have destroyed any evidence of a crime—assuming that there are articles which can be the 'fruits' or 'implements' of the crime of vagrancy. [Citation.] Nor, since the men were under arrest at the police station and the car was in police custody at a garage, was there any danger that the car would be moved out of the locality or jurisdiction. [Citation.] We think that the search was too remote in time or place to have been made as incidental to the arrest and conclude, therefore, that the search of the car without a warrant failed to meet the test of reasonableness under the Fourth Amendment, rendering the evidence obtained as a result of the search inadmissible."

■■ It may be noted that the *ratio decidendi* of *Preston* is that the rule allowing searches contemporaneous to a legal arrest is justified by the need to seize weapons and other things which might be used to escape detention, as well as by the need to prevent the destruction of evidence of a crime, but this justification vanishes when the search is remote both in time and place to the arrest. "Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest." See *Stoner* v. *California*, 376 U.S. 483, 32 U.S.L. Week (U. S. March 23, 1964) 4227.

■■ The evidence in the instant case shows that the search made cannot be made to take cover under the justifications that have been alleged for incidental searches in case of valid arrests. As may be noted, it took place in appellant's absence, when the latter had already been arrested and was under police custody, at a place different and distant from the place where the vehicle was located. Therefore it was not necessary to prevent defendant's escape, or to prevent an assault or attack on the persons who detained him, or the destruction of evidence connected with the commission of the crime with which he was being charged. It was not a search incidental to an arrest. It was not a reasonable search. The

need to obtain a writ authorizing the search could not have been dispensed with.

■■ It need not be said that a search does not become reasonable because of the mere fact that evidence tending to establish the commission of a crime may be seized. We also think it is proper to say that, in the absence of special circumstances, the mere commission of a minor traffic offense does not authorize the search of the vehicle. There must be, we repeat, adequate justification for the search. See, *People* v. *Anders*, 333 P.2d 854 (1959) ; *People* v. *Sanson*, 319 P.2d 422 (Cal. 1957) ; *People* v. *Molarius*, 303 P.2d 350 (Cal. 1956) ; *People* v. *Jiminiz*, 300 P.2d 68 (1956) ; *People* v. *Gale*, 294 P.2d 13 (Cal. 1956) ; *People* v. *Watkins*, 166 N.E.2d 433 (Ill. 1960) ; *Duncan* v. *State*, 234 S.W.2d 835 (Tenn. 1950).

■ It having been determined that the search that produced the only evidence connecting appellant with the commission of the offenses with which he was charged was unreasonable, such evidence was not admissible by constitutional mandate. He shall be acquitted.