[Crim. No. 3240.   First Dist., Div. Two.   Aug. 6, 1956.]

THE PEOPLE, Appellant, v. RAYMOND JIMINEZ et al., Respondents.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Appellant.

Edward T. Mancuso, Public Defender, Robert Nicco, Deputy Public Defender, Benjamin M. Davis, Lionel Browne and Harry Wainwright for Respondents.

THE COURT.—This is an appeal by the People from an order dismissing informations against Raymond Jiminez who had been charged with possession of marijuana, and Tony Galvan and John R. Balazs who had been charged with transportation thereof. The dismissals were granted by the trial court on the basis that search for and seizure of the indispensable evidence, which was marijuana, was unlawful. When the officers found the first quantity of marijuana in an automobile in which defendants had been, they were looking, not for narcotics, but for weapons. Consideration of the evidence, then, falls into two categories: first, that which has to do with the police investigation in the matter of weapons, and second, that which has to do with search for narcotics.

On October 27, 1955, the police officers who later arrested defendants were told by their lieutenant when they reported for duty in the late afternoon that there was to be a juvenile gang fight in the Glen Park district between 7 and 9 o'clock that night. They were informed by the lieutenant that several of the juveniles were armed with guns which they had attached to their legs, and they were instructed to stop and to question "suspicious juveniles" in cars and on foot. At about 7:20 p. m., it being dark, the officer who later arrested defendants was told by another officer that persons armed with chains and baseball bats had been stopped in the neighborhood. At 7:30 p. m. the officer in his patrol car saw a car with three young men in it driving down Chenery Street, and after he had circled the block, he saw this car parked at Chenery and Diamond Streets, and now a fourth young man was in it. The place was one block from the center of the Glen Park district and six blocks from the playground where the fight was supposed to occur. The officer stopped and approached the car, and when he was about four feet

away, he saw defendant Balazs, who was in the front seat, lean towards the seat of the car. He thought he was reaching for a gun. With this, he ordered the occupants to get out of the car, which they did. Up to this point, then, the police work was concerned with the possible gang fight and with the weapons that might be used in it. The reasonableness of the police activity up to this point is discussed following narration of those features of the case relating to narcotics.

As soon as the four had emerged from the car, the officer cast the beam of his flashlight into the car and saw a plastic vial containing two partly smoked cigarettes on the front seat. These later proved to be marijuana. He saw a Prince Albert can on the floor of the car, which, when opened, was found to contain marijuana. At this point, defendants were arrested. Jiminez was searched, and two marijuana cigarettes were found in his pocket. Two packages of cigarette paper were found in the glove compartment of the car.

We are, of course, mindful of the proposition that the reasonableness of any search is not to be justified by what the search turns up but by appearances to the searcher at the time of his action. We believe the officers were thoroughly justified in interrogating defendants and in ordering them from the car. The information they had received at the police station was corroborated by the intelligence that other persons had been seen carrying weapons for a fight. The officers had a right to interrogate persons on the streets in the nighttime. (*People* v. *Simon,* 45 Cal.2d 645, 650 [290 P.2d 531].) When, as they approached defendants to perform this lawful duty, they saw the Balazs movement, they were justified in thinking it likely that he had a weapon.

If the proposition holds true that search is not justified by its results, the converse holds true that a search based on appearances is not rendered unlawful by the fact that the contraband actually on hand was not that which reasonably was thought to be present.

The case of *People* v. *Blodgett,* 46 Cal.2d 114 [293 P.2d 57], is very much in point. Officers saw a cab parked in front of a hotel at 3 a. m., a man and woman in the back seat. The officers ordered them out, and saw one of them withdraw his hand from the juncture of the seat and back cushion. The officer removed the seat and found three marijuana cigarettes The furtive action of defendant was held to have given reasonable grounds for belief that he was hiding contraband. His

act was similar to that of Balazs in the present case, but the present case is somewhat stronger for the People because the ordering of the occupants out of the car in the Blodgett case was before, and in this case after, the furtive motion. It is a natural impulse on confrontation to hide immediately any contraband, and one cannot be heard to complain that he, or a companion, has betrayed the presence of illegal goods by the alacrity with which he attempted to conceal them. Likewise, as was said in *People* v. *Martin,* 46 Cal.2d 106 [293 P.2d 52], the officers in making the investigation had a right to protect themselves, as by ordering the men out. It should be said in fairness to the trial court in the present case that when its ruling was made the Blodgett and Martin decisions had not been rendered by the Supreme Court.

The case of *People* v. *Harvey,* 142 Cal.App.2d 728 [299 P.2d 310], is quite distinguishable. In that case, the officers were proceeding with an arrest before the suspicious movements were made. Here, the arrest came later, after the investigation had produced ample cause for the arrest.

Bearing in mind, as defendants remind us we must, that the officers' actions are to be tested in the light of what then appeared to them, let us suppose that they had not ordered defendants out, and that there had been a gang fight with serious and perhaps fatal results, which have not been unknown in such encounters, surely a reasonable person then testing the officers' inaction in the face of what they had heard and what they saw would conclude that they had failed to perform their duty which is, among many others, to guard the persons and property of citizens from assault, destruction and injury. (*People* v. *Roberts,* *(Cal.App.) 299 P.2d 313.)

The police action was far different from the general "road block" tactics which were found unreasonable in *People* v. *Gale,* 46 Cal.2d 253 [294 P.2d 13], cited by respondents. In the case before us, the activity was limited in time to the hours of the suspected fight, to the general area where it was supposed to take place, to young persons and even then, the final act of ordering the young men from the car came only after the movement described above. Considering the task presented to the officers, both of preserving the peace and of arresting those who might be guilty of conspiracy to commit an assault (such conspiracy being a felony, Pen. Code, § 182),

---

*A hearing was granted by the Supreme Court on August 8, 1956. The final opinion of that court is reported in 47 Cal.2d 374 [303 P.2d 721].

considering the fact that it was nighttime, that the defendants were not in a house but in a highly mobile vehicle, and regarding the evidence the officers had before them, we believe it was their duty to make the investigation they did.

Now, as to the second part of the officers' action. When they saw the vial containing two partly smoked cigarettes, they deduced that these were not ordinary butts being so carefully preserved, especially considering the movement described above. In fact, respondents are silent as to the reasonableness of this deduction. They argue that the next object seen, the Prince Albert can, was, on its face, an innocent thing; but in an investigation, one thing leads logically to another, and it was reasonable to infer that the can, which was in the vicinity of the reaching movement of Balazs, contained, as it was proved to contain, the same substance as the vial. These discoveries, in turn, made the search of the pockets a reasonable one, and so, in the chain of events, the marijuana in Jiminez' pocket was found. The continuing search was reasonable under the circumstances.

The order dismissing the informations is reversed.