[Crim. No. 5686.   Second Dist., Div. One.   Dec. 31, 1956.]

THE PEOPLE, Respondent, v. INEZ BROWN, Appellant.

Minsky & Garber and Albert C. Garber for Appellant.

Edmund G. Brown, Attorney General, and Bonnie Lee Hanson, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the district attorney of Los Angeles County, defendant was charged with a violation of section 11500 of the Health and Safety Code, a felony, in that she unlawfully had in her possession heroin, and was also charged with a prior misdemeanor conviction for narcotics addiction in violation of section 11721 of the aforesaid code, which prior conviction was subsequently admitted. To the offense charged in the information defendant pleaded not guilty. Trial by jury was duly waived and by stipulation the People's case in chief was presented on the transcript of testimony adduced at the preliminary examination. Both parties reserved the right to introduce additional

testimony. At the trial, when the judge announced he had read and considered the testimony contained in the transcript of the preliminary examination, and following argument by counsel, both parties rested after defendant's objection to all evidence presented by the prosecution was overruled. Defendant was adjudged guilty and sentenced to the California Institution for Women for the term prescribed by law.

This appeal is from the judgment of conviction and from "the order . . . denying defendant's motion for a new trial." Since the record reveals that no motion for a new trial was made, the attempted appeal therefrom must be dismissed.

The following will serve as a fair epitome of the factual background surrounding this prosecution. On January 15, 1956, at about 1:35 a. m., Officer Salagi was in an alley in the rear of the Chatterbox Hotel at 441 Stanford Street in the city of Los Angeles. He testified that, "I know that narcotics are sold in that area—quite a bit of narcotics sold in that area"; that he and his partner were in that area investigating vice conditions. That defendant and another woman walked into the alley and appeared to be conversing. The officer was about 50 or 60 feet from the two women and the alley was very well lighted at this point. The defendant was observed placing something in the other woman's hand, when the officer heard what sounded like a coin hit the pavement. The defendant bent over, picked up the object, and placed it in the lady's hand. The other lady was observed removing something from her purse and placing it in the defendant's hand. The latter then placed her hand in the area of her breast. For the purpose of establishing probable cause for making the arrest, the officer was permitted to testify that this incident "indicated to me that there was a transfer of narcotics taking place." The other woman left the area first and then defendant followed her out of the alley. Officer Salagi then left the area and found the defendant at the corner of 5th and Stanford about four minutes later. The defendant was there placed under arrest.

The officer removed a bindle from the left side of a jumper bag where the defendant was observed to have placed an object after the transaction referred to above. The powder contained in the bindle was identified as heroin. The defendant stated to the arresting officer that she had bought the heroin from one Fay Harris and paid $4.00 for it. The officer further testified that he was approximately 50 or 60 feet away from the two women at the time he observed them in conversation. He

could not hear what they were saying. With regard to anything being transferred by one of the women to the other the officer testified:

"Q. With reference to this alleyway here, you actually didn't see anything transferred from one person to the other, did you? A. No, sir, just the way their hands were coming together and the coin dropping to the pavement and the defendant picking the coin up."

Appellant's sole ground for reversal of the judgment is that the trial court committed prejudicial and reversible error in overruling her objection to the introduction into evidence of the bindle of heroin and in refusing to suppress such evidence on the ground that the same was obtained as the result of an illegal arrest and consequent unlawful search and seizure. Appellant earnestly insists that the facts hereinbefore narrated did not furnish reasonable or probable cause for her arrest and that therefore, the aforesaid narcotic was erroneously received in evidence because it was the product of the claimed unlawful trespass upon appellant's constitutional rights.

In *United States* v. *Snyder*, 278 F. 650, 658, reasonable or probable cause is defined as "a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in his belief that the person accused is guilty of the offense with which he is charged." (See also *Hernandez* v. *United States*, 17 F.2d 373; *People* v. *Kilvington*, 104 Cal. 86, 91 [37 P. 799, 43 Am.St.Rep. 73]; *Cook* v. *Singer Sewing Machine Co.*, 138 Cal.App. 418, 422 [32 P.2d 430]; *People* v. *Moore*, 141 Cal.App.2d 87, 89 [296 P.2d 91].)

Penal Code, section 836, subdivision (2) authorizes an officer to make an arrest without a warrant, "When a person arrested has committed a felony . . .," or under subdivision (3) "When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it," or under subdivision (5) "At night when there is reasonable cause to believe that (the person arrested) has committed a felony."

Therefore, the primary question presented to us is whether the facts of which the officer herein had knowledge were such "as would lead a man of ordinary care and prudence to believe, or entertain an honest and strong suspicion that the person (appellant) is guilty" (*People* v. *Kilvington, supra,* p. 92).

■ Applying this rule to the facts of the case now engaging our attention, we are satisfied that it must be held that the officer had reasonable cause to believe that appellant may have committed a felony. Officer Salagi and his partner were patrolling a district where, as testified by Officer Salagi, "I know that narcotics are sold in that area—quite a bit of narcotics sold in that area." The officers were investigating vice conditions in the vicinity. It was 1:35 o'clock in the morning. The scene was a back alley. The officer observed appellant and another woman walk about 15 feet into the alley. They appeared to be conversing with each other, "I observed the defendant here take her hand and the other lady had her hand in this manner (indicating) down, with her palm up, and she was placing something into the other lady's hand—that is, the defendant was placing something into this lady's hand.

"I heard what sounded like a coin hitting the pavement and this defendant then bent over and picked up this object, so that sounded like the ring of a coin and she picked it up and placed it into the hand of this other lady, and then this other lady was observed to go through her purse, take something out and place it in this defendant's hand.

"Then I observed this defendant as she placed her hand up in this area here (indicating) of her breast, and the other lady left the alley first and this defendant followed her, and I left the area where I was and found the defendant at the southwest corner of 5th and Stanford, where I placed her under arrest."

■ Reasonable and probable cause for belief that a person has committed a felony must be measured by the facts presented to the officer at the time he is required to act (*People* v. *Kilvington, supra*, p. 93; *People* v. *Hupp*, 61 Cal.App.2d 447, 449 [143 P.2d 84]). The time of the night; the location of appellant's activities together with her unusual conduct as observed by the officer, we are satisfied present such a state of facts "as would lead a man of ordinary care and prudence to believe, or entertain *an honest and strong suspicion* that the person is guilty" (*People* v. *Kilvington, supra*, p. 92). (Emphasis added.) (See also *People* v. *Rodriguez*, 140 Cal.App. 2d 865, 869 [296 P.2d 38]; *People* v. *Blodgett*, 46 Cal.2d 114, 117 [293 P.2d 57]; *People* v. *Martin*, 46 Cal.2d 106, 107, 108 [293 P.2d 52]; *People* v. *Jiminez*, 143 Cal.App.2d 671, 672-675 [300 P.2d 68].)

We have examined the cases of *People* v. *Cahan*, 44 Cal.2d

434 [282 P.2d 905] ; *People* v. *Brown,* 45 Cal.2d 640 [290 P.2d 528] ; *People* v. *Simon,* 45 Cal.2d 645 [290 P.2d 531], and other cases relied upon by appellant but find them factually distinguishable from the case at bar and we do not find therein anything which militates against the conclusion at which we have arrived herein, under the existing facts presented by the record now before us.

■ While it may not be entirely clear whether the actual arrest occurred before or after the search and seizure, it has been held that if an arrest is lawful, the search incident thereto would not be unlawful merely because it preceded the arrest (*People* v. *Boyles,* 45 Cal.2d 652, 655 [290 P.2d 535] ; *People* v. *Martin,* 45 Cal.2d 755, 761, 762 [290 P.2d 855]).

The attempted appeal from the order denying a motion for a new trial is dismissed. The judgment is affirmed.

Doran, J., and Fourt, J., concurred.

A petition for a rehearing was denied January 10, 1957, and appellant's petition for a hearing by the Supreme Court was denied January 30, 1957.