[Crim. No. 7356. Second Dist., Div. Four. Mar. 27, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. ALFRED GLEN SYMONS, Defendant and Appellant.

Alfred Glen Symons, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, Elizabeth Miller and Calvin W. Torrance, Deputy Attorneys General, for Plaintiff and Respondent.

JEFFERSON, J.—In an information filed by the District Attorney of Los Angeles County, defendant was charged with illegal possession of heroin in violation of section 11500 of Health and Safety Code. The information further alleged that defendant had previously been convicted of two felonies, to wit, possession of narcotics in the District Court of the United States in 1948, and in the State of California in 1952 for violation of section 11500 of Health and Safety Code. Defendant pleaded not guilty and denied prior convictions. Trial was by the court, trial by jury having been duly waived by defendant personally and by all counsel. The cause, pursuant to stipulation of defendant and counsel, was submitted to the court on the testimony contained in the transcript of the proceedings had at the preliminary hearing, and both sides stipulated that neither would introduce additional testimony.

At the commencement of the trial the judge indicated for the record that he had read and considered the evidence produced at the preliminary hearing. No additional evidence was offered and the matter was submitted to the court for decision. The court found defendant guilty as charged and found the prior convictions as alleged in the information to be true. A probation report was ordered. Probation was denied and defendant was sentenced to the state prison for the term prescribed by law.

Officer Sanchez of Los Angeles Police Department testified he had been assigned to the narcotics division for two years prior to the preliminary hearing. He had talked to people who were narcotic addicts; he had seen people taking narcotics intravenously and had seen the effects on those people after they had been injected and had listened to them talk in the parlance they ordinarily used.

On August 31, 1959, Officer Sanchez directed that 24-hour surveillance be placed on Apartment 207a, 3445 South LaBrea Avenue in the City of Los Angeles. The person who was living in that apartment at the time was Robert Hernandez.

On September 3, 1959, Officer Sanchez was in an apartment on the second floor of a building that was next to 3445 South LaBrea Avenue. There was a breezeway between the two buildings. Apartment 207 was on the second floor of 3445 South LaBrea Avenue, and Officer Sanchez was stationed directly across the breezeway from apartment 207. He did not have any electrical instrument or other device with which to amplify any sound.

▮▮▮▮ Officer Sanchez overheard a conversation which was taking place inside apartment 207 between Hernandez and a woman named Helen Lavario who were about 20 feet from the officer. She asked Hernandez to call a person named "Glen" and get him to bring her some "stuff." Soon afterward Officer Sanchez followed Hernandez to a phone booth where he appeared to be making a phone call. About 45 minutes later a 1949 Mercury automobile arrived at the rear of the apartment. The occupant, subsequently identified as defendant, left the car, went to 3445 South LaBrea and entered apartment 207. Officer Sanchez went to the door of the apartment and heard a male voice say "Here is your stuff." Defendant left the apartment and Officer Sanchez followed him to 4825½ West 111th Street in the City of Inglewood.

On September 6, 1959, Officer Sanchez overheard a conversation between Hernandez and Miss Lavario while he was in the hall outside apartment 207. Miss Lavario asked Hernandez to call "Glen" and "ask him to bring over some stuff" because she needed a "fiix." After an argument, Hernandez went to the phone booth at Jefferson and LaBrea and appeared to make a telephone call. About 45 minutes later, the defendant arrived in a car and entered apartment 207 at 3445 South LaBrea. Defendant left the apartment and Officer Sanchez observed through a window that Miss Lavario was heating a spoon with a match.

On Saturday, September 12, 1959, Officer Sanchez heard Miss Lavario ask Hernandez to call "Glen" and "have him bring over some stuff." He overheard a heated argument between Miss Lavario and Hernandez and Miss Lavario left the apartment. The officer went to 4825½ West 111th Street. There he saw defendant leave the house, get into his car and drive to 3445 South LaBrea Avenue and go into apartment 207. Officer Sanchez overheard a male voice say "Here is your stuff—I scored again." After some other conversation about a half hour later, the officer heard a male voice say "Let's take

a fix." Officer Sanchez testified "stuff" meant heroin. The expression "to take a fix" meant to take an injection of heroin and it was his experience that persons using narcotics hypodermically, dilute the heroin with water and heat it with a match, in a spoon.

On September 13, 1959, Officer Sanchez, accompanied by two other officers, placed Hernandez and Miss Lavario under arrest in apartment 207, 3445 South LaBrea Avenue, for violation of the narcotic laws. On the same day, the three officers proceeded to the home of defendant at 4825½ West 111th Street. Officer Sanchez found the screen door locked and the wooden door open. He knocked on the door and a male voice asked "Who is it?" The officer answered "Telegram." Defendant came to the door. Officer Sanchez identified himself as a police office and told defendant to stay where he was. Defendant ran out of sight to another room. Officer Sanchez broke through the screen door with his shoulder and was followed by the other two officers.

Officer Sanchez went into the kitchen and saw defendant over a sink with a faucet running in a small-type prescription jar, which was held in his right hand. He appeared to be dumping the contents into the sink. Officer Sanchez took this jar from defendant. Officer Sanchez placed defendant under arrest. Defendant was handcuffed and Officer Sanchez questioned him in the presence of the other officers. Officer Sanchez asked defendant how much heroin was in the jar when he tried to dispose of it. Defendant answered he did not know whether it was heroin. Officer Sanchez inquired of defendant why he ran when the officer told him they were police officers. Defendant stated he had some socks in the sink and that he was washing them and wanted to attend to them.

Officer Sanchez conducted a search of the remainder of the residence and found a hypodermic syringe and two needles lying on the top of the kitchen sink. He found powder in a glass prescription jar which was on the top of the sink. It was testified by William King, a forensic chemist assigned to the scientific investigation division, that a chemical analysis had been made of the powder and that in his opinion the jar contained heroin. Defendant did not take the stand and did not introduce any evidence to controvert the facts set forth above.

Defendant contends that the judgment of conviction should be reversed because the trial court erred in admitting into evidence a jar containing a substance which later proved to be

heroin, since this evidence was seized from defendant as a result of an illegal search of his home without a search warrant and seizure of evidence in violation of his rights under the California and United States Constitutions. This contention is untenable. ■ A reasonable search without a search warrant may be made of a person and premises as an incident to lawful arrest. Penal Code section 836 provides in part: "A peace officer . . . may without a warrant, arrest a person; . . . 2. When a person arrested has committed a felony, although not in his presence; 3. Whenever he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed."

■ Admittedly, Officer Sanchez had no warrant for the arrest of defendant. What officer Sanchez overheard and saw during his twenty-four hour surveillance, given in some detail above, constituted probable cause for the search and arrest. ■ As stated in *People* v. *Ingle*, 53 Cal.2d 407, 412 [2 Cal. Rptr. 14, 348 P.2d 577] : "Reasonable or probable cause for an arrest has been the subject of much judicial scrutiny and decision. There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances [citations]. ■ Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. [Citations.] . . . ■ The test is not whether the evidence upon which the officer acts in making the arrest is sufficient to convict but only whether the person should stand trial. [Citation.] ■ Where an arrest is lawful the search incident thereto is not unlawful merely because it precedes rather than follows the arrest. [Citations.]"

■ As stated in *People* v. *Williams*, 196 Cal.App.2d 726, 728 [16 Cal.Rptr. 836] : "The rule should not be understood as placing the ordinary man of ordinary care and prudence and the officer experienced in the detection of narcotics offenders in the same class. Circumstances and conduct which would not excite the suspicion of the man on the street might be highly significant to an officer who had had extensive training and experience in the devious and cunning devices used by narcotics offenders to conceal their crimes."

■ Another contention of defendant is that arresting officers had ample time to have obtained a search warrant, an arrest warrant, or both. This contention is of no moment.

We have concluded the arrest was legal, including the search incident thereto.

Defendant next contends there was error in refusal of this court to appoint counsel to assist him on this appeal; that it is a denial of due process of law in violation of both the Constitution of the United States and the California Constitution. There was no error here. The order of this court denying defendant the assistance of counsel on this appeal recites as follows: "This court . . . having made an independent investigation of the record has determined that it would be neither advantageous to defendant nor helpful to this court to have counsel appointed." The order denying appointment of counsel by this court was filed January 5, 1962.

As stated in *People* v. *Hyde*, 51 Cal.2d 152, 154 [331 P.2d 42]: ". . . appellate courts, upon application of an indigent defendant . . . should either (1) appoint an attorney to represent him on appeal or (2) make an independent investigation of the record and determine whether it would be of advantage to the defendant or helpful to the appellate court to have counsel appointed. . . . and should deny the appointment of counsel only if in their judgment such appointment would be of no value to either the defendant or the court." This investigation was made and the court denied the appointment of counsel.

Defendant next contends statements and admissions immediately after his arrest should have been excluded since they were not freely and voluntarily made. The question of whether or not statements of the defendant were freely and voluntarily made is for the trier of fact. In this case, the court found that the statements and admissions were freely and voluntarily made. This we will not disturb on appeal. (*People* v. *Porter*, 99 Cal.App.2d 506, 509 [222 P.2d 151].)

Defendant's last contention is that the evidence introduced should have been excluded since an inadequate foundation was laid to qualify Mr. King, the forensic chemist, as an expert witness in this field. This contention is untenable. The question of foundation of an expert witness and his qualifications is fundamentally in the discretion of the trial judge who sees and hears the witness and determines whether or not he is qualified. As stated in *People* v. *Penny*, 44 Cal.2d 861, 866 [285 P.2d 926]: "The qualifications of an expert witness are for the trial court [citation] and any question as to the degree of his knowledge goes to the weight of

832

his testimony rather than as to its admissibility. [Citations.]''
(See *People* v. *Mack,* 169 Cal.App.2d 825, 830, 831 [338 P.2d
25].)

 Officer King, the forensic chemist stated that in his
experience as an officer assigned to the narcotics division, he
had testified in narcotics cases between 500 and 1,000 times.
We think the witness was well qualified to give an expert
opinion as to whether or not the substance was heroin.

The judgment is affirmed.

Burke, P. J., and Balthis, J., concurred.

A petition for a rehearing was denied April 10, 1962, and
appellant's petition for a hearing by the Supreme Court was
denied May 23, 1962. Peters, J., was of the opinion that the
petition should be granted.