[S. F. No. 22710. In Bank. Apr. 2, 1970.]

KENNETH A. CUNHA, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## Counsel

John D. Nunes, Public Defender, Andre T. La Borde and John Matzger, Assistant Public Defenders, for Petitioner.

Thomas C. Lynch, Attorney General, Derald E. Granberg and John F. Henning, Jr., Deputy Attorneys General, for Respondent and Real Party in Interest.

## Opinion

**PETERS, J.**—Petitioner was charged with possession of heroin. (Health & Saf. Code, § 11500.) The superior court denied his motion to dismiss the information (Pen. Code, § 995), and we issued an alternative writ of prohibtion.

At 4:25 p.m. on July 23, 1969, Officers Lipgens and McCarthy of the Berkeley Police Department took seats at a window of a hot dog stand located between Telegraph Avenue and People's Park on Dwight Way. They were in plain clothes and were carefully observing pedestrians who walked by. Officer McCarthy had participated in 15 to 20 narcotics arrests in that area in three months; Officer Lipgens had participated in 30 to 40 arrests in six months. In a period of about one-half hour, they observed

10 to 20 people walk by the window, and suspected that four to six of these "might possibly be dealing or something like that." These four to six suspects were disregarded as soon as they passed from the officers' view.

Officer Lipgens, who was seated facing Telegraph Avenue, observed petitioner and a companion walking towards him on Dwight. His suspicion aroused by "the manner in which they were walking up the sidewalk and talking to each other and looking around. . . . [l]ooking back and to the side as to see if anyone was watching," Officer Lipgens told Officer McCarthy to "keep an eye" on the suspects as they passed the hot dog stand and proceeded toward People's Park—the direction in which Officer McCarthy was facing. "[H]aving some experience in this type of thing concerning the area," Officer McCarthy agreed that by looking around, the suspects were "acting in a suspicious manner . . . being apprehensive about someone observing them." He observed petitioner and his companion, apparently engaged in conversation, walk 40 to 50 feet east of the hot dog stand and stop.

Although his view was somewhat obscured by the People's Park chain-link fence, Officer McCarthy saw the suspects continue to look around, noticed that petitioner laughed and that the companion leaned against a parked car, and observed each of the suspects reach into his pants pocket. The companion appeared to extract an object—although Officer McCarthy could not actually see an object—while petitioner extracted what appeared to be money. The two placed their hands together in an apparent exchange. Having then observed the suspects for a total of three to four minutes, Officer McCarthy said to Officer Lipgens, "okay, the deal has gone down."

The officers left the hot dog stand and approached the suspects who were walking toward them. The officers identified themselves and asked "were you two dealing." After receiving a negative reply they ordered the suspects to return to the site of the suspected transaction, and placed them under arrest "to determine whether or not a narcotic transaction had been made." Officer Lipgens reached into petitioner's pocket, pulled it up, observed balloons subsequently determined to contain heroin, shoved the balloons back into petitioner's pocket, and handcuffed him. Officer McCarthy found $110 on the person of petitioner's companion. The searches were begun within 15 to 20 seconds after the moment at which the officers identified themselves.

█ Circumstances short of probable cause may justify stopping a pedestrian for further investigation (*People* v. *Mickelson,* 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]), but before an officer detains an individual for questioning by means of physical force or a show of author-

ity, he "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (*Terry* v. *Ohio* (1968) 392 U.S. 1, 16, 19, fn. 16, 20-21 [20 L.Ed.2d 889, 902, 904, 905-906, 88 S.Ct. 1868].) ■ A pat-down is an additional intrusion, and can be justified only by specification and articulation of facts supporting a reasonable suspicion that the individual detained is armed; a further intrusion into a suspect's clothing to recover a weapon requires a similar showing of a reasonable belief that the pat-down has disclosed the presence of a weapon. (*Ibid.; People* v. *Collins,* 1 Cal.3d 658, 662 [83 Cal.Rptr. 179, 463 P.2d 403].) ■ If as a result of the detention or otherwise the officer becomes aware of circumstances which provide probable cause for arrest, he may arrest the suspect and conduct an incident search for weapons and destructible evidence. (*Chimel* v. *California* (1969) 395 U.S. 752, 763 [23 L.Ed.2d 685, 694, 89 S.Ct. 2034]; *People* v. *Mickelson, supra,* 59 Cal.2d at pp. 450-451.)

■ Even if we conclude that petitioner's activities were sufficient to justify a detention—a matter as to which we have some doubts (see *Irwin* v. *Superior Court,* 1 Cal.3d 423, 427 [82 Cal.Rptr. 484, 462 P.2d 12], and cases cited)—the officers did not simply detain but proceeded immediately to an arrest. The search followed within less than a minute of the instant at which the officers identified themselves, with only an order to return to the site of the transaction and a negative reply to the question "were you two dealing" intervening. There is no indication that the officers believed the suspects might be armed, and they did not conduct a pat-down, but instead directly and immediately intruded into petitioner's pocket. Hence, there is no basis upon which to conclude the heroin was disclosed by a pat-down.

■ The search may not be upheld as incident to an arrest. Such a search is valid, and its evidentiary fruits admissible, only if incident to a lawful arrest predicated on probable cause. (E.g., *People* v. *Lara,* 67 Cal.2d 365, 373 [62 Cal.Rptr. 586, 432 P.2d 202].) ■ "To constitute probable cause for arrest, a state of facts must be known to the officer that would lead a man of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person arrested is guilty." (*People* v. *Hillery,* 65 Cal.2d 795, 803 [56 Cal.Rptr. 280, 423 P.2d 208], and cases cited.) As with any intrusion upon an individual's personal security, "simple ' "good faith on the part of the arresting officer is not enough," ' " and "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" his suspicion. (*Terry* v. *Ohio, supra,* 392 U.S. at pp. 21-22 [20 L.Ed.2d at pp. 905, 906].)

 The instant arrest was predicated solely upon the officers' observations that petitioner and his companion looked around as they walked on a public sidewalk in broad daylight, and apparently engaged in some sort of transaction in an area known for frequent narcotics traffic. Neither petitioner's activities nor the location of his arrest provided probable cause for arrest.

In *People* v. *Moore,* 69 Cal.2d 674 [72 Cal.Rptr. 800, 446 P.2d 800], we reasoned: "[T]he only suspicious circumstances relied upon by the officer were that the area was one where narcotic transactions had taken place in the past and that defendant upon seeing the officers' car turned his back on them, moved from a comfortable position, and appeared nervous. Defendant was talking on a telephone in a booth at ten in the morning, and there seems little to distinguish defendant from any other citizen who may have been making a telephone call at that time and place. To hold that police officers should in the proper discharge of their duties detain and question all persons in that location or all those who act nervous at the approach of officers would for practical purposes involve an abrogation of the rule requiring substantial circumstances to justify the detention and questioning of persons on the street." (*Id.,* at p. 683.)

*Moore* held that a high crime rate area cannot convert circumstances as innocent as a telephone call by an individual who acted nervous at the approach of a police officer into sufficient cause to detain that individual. Similarly, an area known to be the site of frequent narcotics traffic should not be deemed to convert circumstances as innocent as an apparent transaction by pedestrians who seem generally concerned with their surroundings into sufficient cause to arrest those pedestrians.[1] Transactions conducted by pedestrians are not per se illegal, and the participants' apparent concern with privacy does not imply guilt. (Cf. *Tompkins* v. *Superior Court,* 59 Cal.2d 65, 68 [27 Cal.Rptr. 889, 378 P.2d 113].) To uphold an arrest

---

[1]Some of the dangers of according officers' views of a location's crime rate substantial weight in estimating the validity of a given intrusion upon a citizen's personal security are suggested by the record before us. Officers Lipgens and McCarthy had between them participated in 45 to 60 arrests in the Telegraph Avenue area in six months. In the half-hour they spent observing pedestrians before they arrested Mr. Cunha, they suspected 4 to 6 of the 10 to 20 people who walked by of possible dealings in narcotics. If the prior arrests were made as they testified this one was— "to determine whether or not a narcotic transaction had been made"—their estimate of the area's narcotics traffic may have been the cumulative product of many illegal arrests. And in the absence of any evidence in the record as to how many of those arrests actually vindicated the officers' suspicions, it is impossible to determine how accurate their estimate of the local narcotics traffic was. In short, giving substantial weight to the perceived crime rate of an area may constitute a self-fulfilling prophecy. (Compare, The President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Police (1967) pp. 186-187, with *id.,* Task Force Report: Crime and its Impact—An Assessment (1967) p. 22.)

based upon these activities because the officers believed they were in an area of frequent narcotics traffic would abridge, if not abrogate, the Fourth Amendment's protection against police intrusions conducted without substantial justification, and might well exacerbate community resentment of harassment. (Cf. *Terry* v. *Ohio, supra,* 392 U.S. at p. 17, fn. 14 [20 L.Ed. 2d at p. 903].)

The People argue that we should give weight to the special knowledge of experienced narcotics officers. (*People* v. *Symons,* 201 Cal.App.2d 825, 830 [20 Cal.Rptr. 400]; *People* v. *Williams,* 196 Cal.App.2d 726, 728 [16 Cal.Rptr. 836].) Although specialized knowledge may render suspicious what would appear innocent to a layman, the test remains whether the circumstances would " 'warrant a man of reasonable caution' "—who possessed such knowledge—" 'in the belief' that the action taken was appropriate. . . ." (Cf. *Terry* v. *Ohio, supra,* 392 U.S. at pp. 21-22 [20 L.Ed.2d at pp. 905-906].) The cases cited by the People involved narcotics officers' expertise in the jargon of the narcotics trade. Here the officers heard nothing of the conversation between defendant and his companion, and the record evidences nothing which would distinguish a layman's estimate of the suspiciousness of the petitioner's behavior from the officers' estimate. As was the case with the telephone call in *Moore* the behavior observed here was consistent with innocence and any relation to criminality did not depend upon the expertise of the observer. (Cf. *People* v. *Sanders,* 46 Cal.2d 247 [294 P.2d 10].)

*People* v. *Towner,* 259 Cal.App.2d 682 [66 Cal.Rptr. 559]; *People* v. *Garcia,* 171 Cal.App.2d 757 [341 P.2d 351]; *People* v. *Brown,* 147 Cal. App.2d 352 [305 P.2d 126], cited by the Attorney General, involved circumstances more suspicious than those involved here.

In the present case, Officer McCarthy agreed that defendant and his companion were arrested "to determine whether or not a narcotic transaction had been made." ▮ It is settled that " '[a]n arrest may not be used as a pretext to search for evidence.' " (*People* v. *Haven,* 59 Cal.2d 713, 719 [31 Cal.Rptr. 47, 381 P.2d 927], and cases cited.) Whether or not this arrest was such a pretext, the circumstances fell far short of specific and articulable facts constituting probable cause, and the arrest was unlawful.

Let a writ of prohibition issue as prayed.

Mosk, Acting C. J., Tobriner, J., and Sullivan, J., concurred.

**BURKE, J.**—I dissent, for in my view the arresting officers had probable cause to arrest petitioner. The majority correctly state the applicable rule that "To constitute probable cause for arrest, a state of facts must be known to the officer that would lead a man of ordinary care and prudence to

believe, *or to entertain a strong suspicion,* that the person arrested is guilty." (*People* v. *Hillery,* 65 Cal.2d 795, 803 [56 Cal.Rptr. 280, 423 P.2d 208], italics added; accord, *People* v. *Curtis,* 70 Cal.2d 347, 358 [74 Cal.Rptr. 713, 450 P.2d 33].)

After a full hearing on the matter, the committing magistrate (see Pen. Code, § 872) found that the arresting officers acted with probable cause, stating that, "Probable cause . . . is very closely related with suspicion, it's a strong suspicion by a conscientious and by a reasonable man that a crime is being committed and these circumstances would lead any reasonable man, certainly a reasonable police officer, to the conclusion that a crime was probably being committed. In fact, it's the only reasonable conclusion that I think a person can come to who observed this particular series of events."[1] There is ample evidence in the record to support the magistrate's conclusion. (See *People* v. *Lara,* 67 Cal.2d 365, 374 [62 Cal.Rptr. 586, 432 P.2d 202].)

Officer McCarthy testified that he had made 15 or 20 previous arrests in the general area of Telegraph Avenue in Berkeley near the so-called "People's Park." That a particular area is known to be the scene of narcotics traffic is a significant factor in determining whether probable cause existed. (See *People* v. *Towner,* 259 Cal.App.2d 682, 684 [66 Cal.Rptr. 559]; *People* v. *Brown,* 147 Cal.App.2d 352, 356 [305 P.2d 126].)

Both arresting officers had substantial prior experience in detecting illegal narcotics transactions. Their prior experience led them to suspect that petitioner and his companion were transacting a sale of narcotics. Observation of facts which are insufficient to raise the suspicions of ordinary men may be sufficient to constitute probable cause for arrest "in view of the officer's training and experience in the field of narcotics." (*People* v. *Berutko,* 71 Cal.2d 84, 90-91 [77 Cal.Rptr. 217, 453 P.2d 721]; see *People* v. *Nailor,* 240 Cal.App.2d 489, 493 [49 Cal.Rptr. 616], cert. den. 385 U.S. 1030 [17 L.Ed.2d 678, 87 S.Ct. 763]; *People* v. *Symons,* 201 Cal.App.2d 825, 830 [20 Cal.Rptr. 400]; *People* v. *Williams,* 196 Cal. App.2d 726, 728 [16 Cal.Rptr. 836].) As stated in *Williams, supra,* "The rule [requiring probable cause] should not be understood as placing the ordinary man of ordinary care and prudence and the officer experienced in the detection of narcotics offenders in the same class."

Keeping in mind the area involved and the prior experience of the arrest-

---

[1]Thereafter, petitioner moved to dismiss the information (Pen. Code, § 995), which motion was denied by respondent court.

ing officers, the following observations by the officers were sufficient to arouse a "strong suspicion" of petitioner's guilt. (*People* v. *Hillery, supra,* 65 Cal.2d 795, 803.) While under observation, petitioner and his companion were continually looking around and from side to side, as if (according to both officers) they were apprehensive about someone observing them. According to Officer McCarthy, the suspects walked together until they reached the fence surrounding People's Park, and then "at the same time, both individuals removed something from their pants pocket." Petitioner took what "definitely appeared to be money" from his pocket and handed it to his companion, who gave something to petitioner. During this transaction, the suspects kept their hands cupped, in fists, "closing the area of the palms from sight." After completing their business, the suspects turned around and started back along Telegraph Avenue, and were thereupon arrested.

From his prior experience, Officer McCarthy was justified in strongly suspecting that the foregoing furtively conducted cash transaction involved an illegal sale of narcotics. The majority assert that "Transactions conducted by pedestrians are not per se illegal, and the participant's apparent concern with privacy does not imply guilt," (*ante,* p. 357), as if such unusual and secretive occurrences take place daily upon every street corner. To the contrary, I am inclined to accept the view of the magistrate that the *only* reasonable inference from petitioner's covert conduct was that he was participating in an illegal narcotics sale. But even if one concedes that there could have been an innocent explanation for this conduct, the mere possibility thereof would not dispel a strong suspicion to the contrary on the part of these particular officers, or any other reasonably prudent and experienced narcotics officers in their position.

Several cases have noted that suspicious or stealthy conduct is quite significant in determining whether probable cause existed. (See *People* v. *Webb,* 66 Cal.2d 107, 112 [56 Cal.Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708]; *People* v. *Curtis, supra,* 70 Cal.2d 347, 358.) Other cases have found probable cause for arrest where furtive conduct is coupled with an apparent cash transaction such as involved herein. (See *People* v. *Towner, supra,* 259 Cal.App.2d 682; *People* v. *Garcia,* 171 Cal.App.2d 757 [341 P.2d 351]; *People* v. *Brown, supra,* 147 Cal.App.2d 352.)

In *People* v. *Moore,* 69 Cal.2d 674 [72 Cal.Rptr. 800, 446 P.2d 800], cited as controlling by the majority, defendant merely appeared "nervous" at the approach of police officers. *Moore* did not involve the suspicious and secretive conduct and shielded cash transaction present in the instant case.

In my view, there is ample support for the determination of the magistrate and respondent court that probable cause existed for petitioner's arrest.

McComb, J., and Draper, J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.