[Crim. No. 9011. First Dist., Div. Three. May 19, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
HERMAN GRANDE TORRALVA, JR., Defendant and Appellant.

## COUNSEL

Robert Y. Bell for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Don Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CALDECOTT, J.**—Appellant was charged with a violation of Health and Safety Code section 11530 (possession of marijuana) and pleaded not guilty. Appellant's motion made pursuant to Penal Code section 995 was denied, and a motion made pursuant to Penal Code section 1538.5 was denied.

By stipulation, the matter was submitted on the transcript of the preliminary hearing and the transcript of the section 1538.5 hearing. The court, after ascertaining that the appellant understood the nature of the proceedings and that he was waiving his right to a jury trial, found appellant guilty. The appeal is from the judgment.

On June 2, 1969, at 4:30 a.m., a Santa Rosa police officer investigated a 1955 Chevrolet station wagon parked outside Denny's Restaurant. The

vehicle had neither a license plate nor a suspension receipt. A temporary paper license plate attached to the back window was only partially visible. There were two occupants sleeping in the rear of the vehicle. The officer awakened them and asked if either was the vehicle's owner. They said that the owner was inside, that they were hitchhikers whom the vehicle's owner had just picked up and that they did not know the owner personally. A few minutes later, appellant came out of Denny's Restaurant and stated he was the vehicle's owner. The officer questioned him concerning the vehicle's ownership and asked for his driver's license. The officer then asked to see the vehicle's registration, and appellant said he would get it. Appellant opened the front door on the driver's side and pulled down the visor. At this moment, a plastic box containing a brown substance fell from the visor, bounced off the seat and landed at the feet of the officer and appellant. The officer started to reach down to return the box to appellant, when appellant suddenly grabbed it and shouted, "This is an illegal search. You can't have it." At the same time, appellant stepped back, placed the box behind his back, and attempted to shove the box underneath and in back of the front seat.

His suspicions aroused by appellant's conduct, the officer investigated further. He grabbed the box out of appellant's hand and opened it. It contained marijuana. The officer did not have a warrant.

▮ The record discloses the officer was investigating a vehicle which, in the early morning hours, had no license plate, no suspension receipt and whose temporary license was not readable. Prima facie the statute had been violated. (See Veh. Code, §§ 5200-5201.) Under these circumstances, the officer was permitted to require appellant, who claimed to be the owner, to produce his driver's license and car registration. (*People* v. *Odegard,* 203 Cal.App.2d 427, 431 [21 Cal.Rptr. 515].) The detention, under these circumstances, was not unlawful. (See *Cunha* v. *Superior Court,* 2 Cal.3d 352, 355-356 [85 Cal.Rptr. 160, 466 P.2d 704]; *Irwin* v. *Superior Court,* 1 Cal.3d 423, 428 [82 Cal.Rptr. 484, 462 P.2d 12].)

▮ Appellant contends there was no probable cause to make a search. The state carries the burden of justifying the search and seizure. (*Preston* v. *United States,* 376 U.S. 364, 367 [11 L.Ed.2d 777, 780-781, 84 S.Ct. 881]; *People* v. *Superior Court* [*Kiefer*] 3 Cal.3d 807, 812 [91 Cal.Rptr. 729, 478 P.2d 449].)

There is a valid distinction made between searches of premises and searches of vehicles. (See *Chimel* v. *California,* 395 U.S. 752, 763 [23 L.Ed. 2d 685, 694, 89 S.Ct. 2034].) ▮ In the case of searches of premises, absent well recognized exceptions, a search warrant must be obtained. (See *People* v. *Marshall,* 69 Cal.2d 51 [69 Cal.Rptr. 585, 442 P.2d 665].)

■ Yet vehicles may be searched without a warrant, on facts not justifying a warrantless search of a residence or office, because of their ready mobility and the logical consequences of that mobility. (*Chambers* v. *Maroney*, 399 U.S. 42, 48 [26 L.Ed.2d 419, 426-427, 90 S.Ct. 1975]; *Preston* v. *United States, supra.*) Nevertheless, only exigent circumstances will justify a warrantless search of a vehicle. (*Chambers* v. *Maroney, supra.*) ■ There is no precise formula for determining the existence of probable cause to conduct a search; each case will be decided on its own facts and circumstances. (*People* v. *Superior Court* [*Kiefer*] *supra*, 3 Cal.3d at p. 813; *People* v. *Burke*, 61 Cal.2d 575 [39 Cal.Rptr. 531, 394 P.2d 67].) ■ A warrantless search may be made for articles the possession of which is itself unlawful. (*People* v. *Superior Court* [*Kiefer*] *supra*, 3 Cal.3d at p. 812.) To justify the search, there must be independent probable cause to believe the vehicle does in fact contain contraband. (*People* v. *Superior Court* [*Kiefer*] *supra*, 3 Cal.3d at p. 815.) Respondent contends appellant's furtive conduct provided the officer with independent probable cause to search the vehicle.

■ Furtive conduct indicating that something is being concealed will justify a search of that portion of the vehicle where it appeared the object was hidden. (*People* v. *Doherty*, 67 Cal.2d 9 [59 Cal.Rptr. 857, 429 P.2d 177]; *People* v. *Superior Court* [*Vega*] 272 Cal.App.2d 383, 387 [77 Cal. Rptr. 646].) As the court stated in *People* v. *Superior Court* [*Kiefer*] *supra*, 3 Cal.3d at p. 819: "And the officer need not even see recognizable contraband, so long as he observed the suspect in the act of deliberately hiding a package or box which, in the circumstances, it is reasonable to believe contains contraband. (*People* v. *Doherty* (1967) 67 Cal.2d 9, 21-22 [59 Cal. Rptr. 857, 429 P.2d 177], defendant and others refused to leave a service station at 3 a.m.; when officers arrived and asked for identification, defendant was seen to take a small white package from his pocket and drop it into the open motor of a parked car; *People* v. *Superior Court* (1969) 272 Cal. App.2d 383, 387 [77 Cal.Rptr. 646], car stopped for driving without lights at 2 or 3 a.m.; defendant bent forward and officers saw him push a small white box under the front seat.)"

In *People* v. *Superior Court* [*Kiefer*] *supra* at page 811, the only conduct relied upon to justify the search consisted of a speeding car that immediately pulled over to the side of the road when the officer turned on his red light. "At this point Officer Cameron saw a woman's head rise from the passenger portion of the front seat; she turned and put her arm over the back of the seat, then faced forward again, bent down toward the floor, and reassumed a normal sitting position. The driver of the Pontiac, defendant Martell Kiefer, alighted first and walked toward Officer Cameron. The officer told Mr. Kiefer why he had stopped him, and the latter readily acknowledged he had

been speeding and produced his driver's license." The court held this conduct to be insufficient to justify the search.

In *Cunha* v. *Superior Court, supra,* the court stated: "The instant arrest was predicated solely upon the officers' observations that petitioner and his companion looked around as they walked on a public sidewalk in broad daylight, and apparently engaged in some sort of transaction in an area known for frequent narcotics traffic. Neither petitioner's activities nor the location of his arrest provided probable cause for arrest." (P. 357.)

In *Remers* v. *Superior Court,* 2 Cal.3d 659 [87 Cal.Rptr. 202, 470 P.2d 11], it was stated: "Officer McCarthy observed petitioner standing outside Pepe's [restaurant] talking with a 'hippie-type' male; she looked around 'over either shoulder,' removed a tinfoil package from her purse, and then 'nodded in a motion that they both go into Pepe's.' Officer McCarthy could not tell what was inside the tinfoil package." As the court pointed out "[I]t is thus clear that in itself a tinfoil package is so commonly used for legitimate purposes that it is not a suspicious circumstance; . . ." The court further stated "[P]etitioner exhibited less concern with her surroundings than did the suspects in *Cunha;* and her apparent concern was consistent with innocent activity—such as keeping an eye out for acquaintances."

In the present case the officers saw a plastic box fall when appellant pulled down the visor of the car. As he bent over he noticed it contained a brown substance but at that time he could not tell what it was. The officer testified "He [appellant] quickly grabbed it [the box] stuck it behind his back, tried to stick it in the back behind the driver's seat and said, 'This is an illegal search. You can't do this! . . .'" The officer then seized the box, which contained the contraband.

Here we do not have the case of an officer who speculates that the movement of an arm or looking over the shoulder is a guilty movement, made in an attempt to conceal an object, which the officer had never seen, but speculates exists. Then the officer further speculates that the object is contraband. Here he officer did not have to speculate as to the meaning of any of appellant's movements. It was clear and apparent that appellant was attempting to seize the box and hide it from the officer to prevent him from learning the nature of the contents. Furthermore, the officer did not have to speculate as to whether there was an object actually being hidden. He saw the object. The only thing the officer could not be sure of was the nature of the brown substance in the plastic box. These facts justifying the search were stronger than those in *People* v. *Doherty, supra,* and *People* v. *Superior*

*Court* [*Vega*], *supra*. The contraband was obtained by a lawful search based upon reasonable cause.

The judgment is affirmed.

Draper, P. J., and Brown (H. C.), J., concurred.