[Crim. No. 4177. Fourth Dist., Div. Two. Dec. 7, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID BRUCE CONLEY, Defendant and Appellant.

## COUNSEL

William L. Anderson, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General and William E. James, Assistant Attorney General, Daniel J. Kremer and James T. McNally, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KERRIGAN, Acting P. J.**—Charged with possession of 100 LSD tablets for the purpose of sale (Health & Saf. Code, § 11911), defendant moved to dismiss the information (Pen. Code, § 995), and when the motion was denied, entered a plea of not guilty. He made a motion to suppress evidence (Pen. Code, §1538.5) and that motion was also denied. A jury found him guilty as charged. He was committed to the California Youth Authority for the term prescribed by law.

He appeals the judgment or order of commitment on the basis that the aforesaid motions were erroneously denied inasmuch as the confiscation of the drugs flowed from an illegal search and seizure.

About 11 p.m. on July 26, 1969, two Laguna Beach police officers dressed in plainclothes were conducting a narcotics stake-out at a parking lot adjacent to Albertson's Market. The market stands on the southeast corner of the intersection of South Coast Highway and Cleo Street; a real estate office is on the southwest corner; a Taco Bell restaurant at the northwest corner; and the Saddleback Inn on the northeast corner. The two officers had the area under surveillance because they had made approximately 50 narcotics arrests in the parking lot during the previous three months.

About 11:10 p.m. the officers observed a white 1957 Chevrolet station wagon park in the lot. Two teenagers in dark trousers and dark sweaters or jackets got out of the car. One of the officers kept the youths under surveillance and he testified to the following effect: The lot was well-lighted; sitting some 75 feet away, he had no difficulty observing the movements of the two youngsters after they exited the car; both boys walked to the rear of the car; one proceeded towards the intersection, but he could not identify which one—the driver or the passenger; the other hesitated at the rear of the vehicle, turned, faced toward the rear of the car, looked to the right, then to his left, and then behind him; the youth reached with hs right hand into a small, recessed area between the rear tailgate and rear bumper of the vehicle; the tailgate was closed; he could not see whether the boy had anything in his hand; after reaching into the recessed area for 3-4 seconds, the boy removed his hand and hurried towards his companion who had continued walking towards the intersection; both youngsters crossed the highway and visited the Taco Bell.

The officer waited a few minutes and then walked to the rear of the station wagon. He looked into the narrow area between the tailgate and the bumper but could not see anything. He then extended his right hand into the small opening or space and felt a plastic bag. He partially removed the bag and observed some white, barrel-shaped tablets in it. As he was in the process of removing the bag, one of the youngsters— the defendant—returned and yelled, "Hey, that's my car." The officer dropped the bag back into the opening where he had found it and reached his left hand in his rear pocket for his identification badge. The defendant turned and started to run. The officer stated loudly, "Police officer," and grabbed the boy by the sleeve. Defendant pulled free and continued running. The officer apprehended him a short distance away. Defendant was escorted back to the rear of the station wagon where the officer removed the plastic bag. The officer obtained the defendant's name and age and placed him under arrest for possession of dangerous drugs for sale. The bag contained 100 LSD tablets.

The second officer also testified at trial. His testimony tended to corroborate the testimony of the arresting officer.

Defendant testified in his own behalf and his testimony may be summarized as follows: He had driven with some friends in the afternoon to the intersection involved; he had left his friends and promised to return late in the evening to pick them up; he then proceeded to the north Laguna Beach area; he remained there awhile and, while returning to south Laguna, picked up the hitchhiker; the hitchhiker wanted to go to the same Taco Bell where he had dropped his friends; he parked in the market parking lot and the hitchhiker said goodnight and left; he then joined his friends at the Taco Bell; as he was returning to his car, he saw a man bent over the tailgate; he did not know it was a policeman because the man was dressed in casual clothing; when the plainclothesman reached toward his rear pocket, he thought he was reaching for a weapon so he ran; he heard the officer identify himself but thought he was a thief or hoodlum; he had not stooped or bent over the rear bumper; he had no knowledge of the LSD.

The male friend the defendant had dropped at the Taco Bell verified that the defendant had returned to the Taco Bell to pick him up. He also described seeing the officer at the rear of the car and the defendant running towards the car, and the events that transpired thereafter.

 The first question presented is whether the officer's act in reaching into the recessed area between the bumper and tailgate of the defendant's station wagon, which resulted in the finding of the plastic bag containing 100 LSD tablets, constituted an unlawful search.

 Preliminarily, the Attorney General contends that the appeal should be dismissed on the ground that this court previously denied extraordinary relief on two occasions following the denial of both the dismissal motion and the suppression motion, and that the California Supreme Court similarly denied a hearing in each instance; consequently, he maintains the doctrine of the law of the case governs.

While there is authority that an accused cannot relitigate an issue which is adversely decided against him following a full-fledged review on a prior occasion (*People* v. *Werber,* 19 Cal.App.3d 598, 602 [97 Cal.Rptr. 150]), we have never resolved the constitutional issue raised herein by a written opinion. We take the position that an accused is entitled to a formal review of an order denying his motion to dismiss the information or his motion to suppress evidence where the matter has not been decided by a written opinion.

██ ██ Turning to the merits of the search and seizure issue, the de-

fendant contends the search was illegal because it was not supported by probable cause. A motor vehicle, because of its mobility, may be searched without a warrant so long as the officer has reasonable cause to believe it is carrying contraband. (*Carroll* v. *United States,* 267 U.S. 132 [69 L.Ed. 543, 45 S.Ct. 280, 39 A.L.R. 790]; *People* v. *Gale,* 46 Cal.2d 253, 255 [294 P.2d 13].) Applying the probable cause formula to the case under review, the relevant facts known to the searching officer at the time of the search were as follows: (1) one of the two occupants of the car walked to the rear of the car, looked around, and reached behind the bumper; and (2) the officer had previously made numerous arrests in the area. This evidence, which amounts at most to furtive conduct in a narcotics area, was insufficient as a matter of law to establish probable cause to believe the car contained contraband.

The Attorney General argues that the conduct of one of the youths in looking around and then reaching behind the bumper constituted a "furtive gesture," thereby justifying the search. However, a furtive gesture alone is not sufficient cause for a search of an automobile. (See *People* v. *Superior Court,* 3 Cal.3d 807, 817-818 [91 Cal.Rptr. 729, 478 P.2d 449].) Moreover, the rationale of the furtive gesture doctrine applies only where the gesture is made in response to seeing an approaching police officer; the theory is that it is a natural impulse on confrontation for a guilty person to conceal contraband. (*People* v. *Jiminez,* 143 Cal.App.2d 671, 674 [300 P.2d 68].) The furtive gesture doctrine is analogous to leaving the scene of a crime or fleeing from an approaching officer. Here, we have no more than an effort to hide something from the general public. Even if the undercover officer had been sure that an object was being deposited in the bumper area, he could be no more certain that it was contraband than it was a spare set of keys to the car, or some other innocuous item. Merely reaching behind a bumper is as consistent with innocent activity as with criminal activity. (See *Cunha* v. *Superior Court,* 2 Cal.3d 352, 357 [85 Cal.Rptr. 160, 466 P.2d 704]; *Remers* v. *Superior Court,* 2 Cal.3d 659, 665 [87 Cal.Rptr. 202, 470 P.2d 11].)

In *Cunha, supra,* no probable cause for a search existed where the defendants in a known narcotics area merely looked around suspiciously and then exchanged an unseen object for money. In *Remers, supra,* petitioner was observed by undercover agents in a narcotics area glancing surreptitiously over "either shoulder" and then offering a tinfoil package to a hippie-type person; the court again held that such conduct was insufficient to constitute probable cause to arrest or search.

Similarly, the fact the parking lot was a known narcotics site is not enough, even when coupled with furtive conduct, to uphold the search.

The constitutional requirement of probable cause cannot be abrogated merely because a particular area has been utilized for narcotics trafficking. (*Remers* v. *Superior Court, supra,* 2 Cal.3d 659, 665.)

 The Attorney General contends that, even if there was no probable cause for the search, the officer's conduct was not unreasonable because the defendant did not have an expectation of privacy with regard to contraband hidden behind the rear bumper of his car. The reasonable expectation of privacy test was developed in *People* v. *Bradley,* 1 Cal.3d 80 [81 Cal.Rptr. 457, 460 P.2d 129], to uphold a search of a private backyard without a warrant. The court stated: "A number of cases in upholding searches in open fields or grounds around a house have stated their conclusions in terms of whether the place was a 'constitutionally protected area,' . . . That phrase, however, does not afford a solution to every case involving a claim of an illegal search and seizure . . . , and we believe that an appropriate test is whether the person has exhibited a reasonable expectation of privacy, and if so, whether that expectation has been violated by unreasonable governmental intrusion." (*Ibid.,* p. 84.)

The factors in this case relevant to the expectation of privacy doctrine may be categorized as follows: the defendant parked his car in a well-lighted public parking lot; either defendant or the hitchhiker dropped contraband into an opening between the tailgate and bumper of the car; there was a mudguard of some sort running between the tailgate and bumper which provided a floor for the hidden cavity; the opening was approximately 3 inches wide and 3 inches deep; contraband dropped into the opening could easily be retrieved by a person standing near the back end of the car, although it would be hidden from the sight of a mere passer-by.

The Attorney General contends there was no reasonable expectation of privacy in these circumstances. He cites *Martin* v. *United States,* 155 F.2d 503 [examination of a jug left on the ground under a parked car], *People* v. *Roberts,* 47 Cal.2d 374 [303 P.2d 721] [inspection of a radio left in plain sight], and *People* v. *Maltz,* 14 Cal.App.3d 381 [92 Cal. Rptr. 216] [reaching through an opening or hole in garage to seize contraband visible from outside the garage]. But those cases are not helpful in that they were "plain sight" cases. The contraband here was not in plain sight.

 The Attorney General also contends that the officer's act in reaching behind the bumper was not a "search" in that the contraband might have been in plain sight had the officer looked in with a flashlight, and that it was at least very close to being in plain view in that it was in easy reach of passers-by. Speculation as to whether the officer could have seen

the bag of LSD had he used a flashlight is irrelevant. The officer testified that he did not see anything behind the bumper before he reached into the recessed area. He was not certain what, if anything, he would encounter, but was engaged in a purely exploratory search in the hope that he might find some sort of contraband. Nor will we extend the plain-sight doctrine to situations where something was easily reached, although out of sight. The doctrine is applicable only when the object is open to both eye and hand. (See *People* v. *Marshall,* 69 Cal.2d 51, 58 [69 Cal.Rptr. 585, 442 P.2d 665].)

 Under the circumstances of this case, we conclude that the officer violated a reasonable expectation of privacy when he reached into the hidden cavity behind the bumper of defendant's car. The officer admittedly could not see what might be hidden behind the bumper, but had to reach in blindly and grope about to find the contraband. It was apparent that whoever placed the bag behind the bumper expected to preserve its privacy from the general public. We cannot say that the expectation was unreasonable. People often place objects such as spare car keys in hidden areas of their automobile with the expectation that such areas will not be searched.

 Having found that the search was not based on probable cause and that it violated a reasonable expectation of privacy, we conclude that the evidence was the product of an illegal search and seizure.

The judgment of conviction is reversed.

Gabbert, J., and Kaufman, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 3, 1972.