[Crim. No. 21812. Second Dist., Div. Two. Dec. 20, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
BENNIE LEE GARRETT III, Defendant and Appellant.

## COUNSEL

Richard S. Buckley, Public Defender, James L. McCormick, Harold E. Shabo, Bruce Hoffman and Herbert M. Barish, Deputy Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Russell Iungerich and Daniel W. McGovern, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

FLEMING, J.—Garrett appeals his conviction for possession of marijuana (Health & Saf. Code, § 11530), an offense adjudicated a misdemeanor

and for which he was placed on probation on condition of 15 days in the county jail.

About 8:15 a.m. on 11 October 1971 Compton Police Sergeant Alfred S. Smith was parked in an unmarked police vehicle at a street intersection adjacent to Compton High School near a location designated by the school as a smoking spot for students. Garrett, age 20, was leaning against a chain link fence about 40 feet from the police officer's vehicle. A young man wearing a red and white shirt and carrying a notebook folder walked up to Garrett, and the two appeared to converse. Garrett then handed Red and White Shirt "some type of paper currency . . . green in color." Red and White Shirt reached into his notebook folder and pulled out a package "five inches long, about an inch and a half to two inches wide. It appeared to be flat and wrapped in wax paper." He gave it to Garrett, who put it in his right rear pocket. After further brief conversation Red and White Shirt entered the school campus.

Sergeant Smith, commander of the Compton Police Department's vice and narcotic bureau, had participated in approximately 500 narcotic arrests. In his experience, marijuana is normally packaged in waxed paper bags when sold to young people in $5 and $10 quantities. Sergeant Smith waited a few minutes for the arrival of an assistant and then arrested Garrett for possession of marijuana. In the latter's right rear pocket he found a folded waxed paper bag containing marijuana.

Garrett, citing as authority *Cunha* v. *Superior Court,* 2 Cal.3d 352 [85 Cal.Rptr. 160, 466 P.2d 704], and *Remers* v. *Superior Court,* 2 Cal.3d 659 [87 Cal.Rptr. 202, 470 P.2d 11], contends on appeal that Sergeant Smith had no reasonable cause to believe a crime had been committed and hence no legal authority to make an arrest. In his view the marijuana was the product of an unlawful search and seizure and wrongfully admitted in evidence, and hence the conviction should be reversed. His argument requires us to analyze the facts in *Cunha* and *Remers* in order to determine what visual observations suffice to establish reasonable cause for street arrest for possession of a narcotic.

In *Cunha,* two police officers one afternoon were watching pedestrians in an area where the officers had previously made numerous narcotic arrests. The officers saw Cunha and a companion walking on the sidewalk, talking, looking around, and acting in a suspicious manner, as though apprehensive that someone might be watching. The officers saw Cunha and the companion reach into their pants pockets. "The companion appeared to extract an object—although [the officer] could not actually see an object—while

[Cunha] extracted what appeared to be money. The two placed their hands together in an apparent exchange." (At p. 355.) The officers arrested Cunha, searched him, and found a balloon of heroin in his pocket. The Supreme Court concluded the arrest was unreasonable: "The instant arrest was predicated solely upon the officers' observations that petitioner and his companion looked around as they walked on a public sidewalk in broad daylight, and apparently engaged in some sort of transaction in an area known for frequent narcotics traffic. Neither petitioner's activities nor the location of his arrest provided probable cause for arrest." (At p. 357.)

In *Remers*, two police officers one night saw Remers talking to a companion outside a pizza parlor in an area known for its volume of drug traffic. The officers had previously heard that Remers was a seller of dangerous drugs. One of them saw Remers look over either shoulder, show her companion a tinfoil package in her purse, and motion him to enter the pizza parlor. The officer told his colleague that Remers was making a deal, and the two officers followed the couple inside. In the pizza parlor one officer saw the tinfoil package in Remers' purse. He reached into her purse, removed the package, and found that it contained seconal tablets individually wrapped in tinfoil. Remers was arrested for possession of dangerous drugs. The Supreme Court concluded that this arrest, too, was unreasonable: "The circumstances in the instant case provide less justification for arrest than did the circumstances held insufficient to validate the arrest in *Cunha*. The act of showing a tinfoil package to a companion is even less suspicious than that of engaging in a sidewalk sale. Neither officer was able to see the contents of the package or any impressions on the tinfoil wrapping, and Officer McCarthy himself admitted at the preliminary hearing that for all he knew at the time he approached petitioner, the tinfoil package could have contained cookies. Petitioner exhibited less concern with her surroundings than did the suspects in *Cunha*; and her apparent concern was consistent with innocent activity—such as keeping an eye out for acquaintances. [¶] The fact that the area is known to be the site of frequent narcotics traffic cannot convert circumstances as innocent as those involved in this case—an individual being generally concerned with her surroundings while displaying a tinfoil package to a companion—into sufficient cause to arrest." (2 Cal.3d at p. 665.)

In the case at bench an experienced police officer saw Garrett and another engage in conversation and then saw Garrett hand the other person paper currency and receive back a flat waxed paper package of the size and appearance used for the sale of marijuana in small quantities. Sergeant Smith's observations differed sharply in degree of specificity from those of the officers in *Cunha* and *Remers*. In *Cunha* only an apparent

transaction was seen, one involving apparent money in an apparent exchange for an unseen object. In *Remers* a suspicious package was observed, but neither money nor merchandise was seen to change hands. In contrast Sergeant Smith observed all the elements of a completed sale—preliminary negotiation, a delivery of paper currency, and a reciprocal delivery of a suspicious package, specifically, a waxed paper package of a type known by him to be commonly used for marijuana sales.

The factors that differentiate the present case from its predecessors may be tabulated:

|  | *Garrett* | *Cunha* | *Remers* |
|---|---|---|---|
| Direct observation of transfer of currency | Yes | No | No |
| Direct observation of transfer of suspicious package | Yes | No | No |

■ At bench the legal issue is whether the police officer's observation of a street sale provided him with sufficient reasonable cause to believe that a public offense had been committed. ■ "To constitute probable cause for arrest, a state of facts must be known to the officer that would lead a man of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person arrested is guilty [of a crime]." (*People* v. *Hillery,* 65 Cal.2d 795, 803 [56 Cal.Rptr. 280, 423 P.2d 208].) "And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (*Terry* v. *Ohio* (1968) 392 U.S. 1, 21 [20 L.Ed.2d 889, 906, 88 S.Ct. 1868].)

■ In our view the circumstances at bench would arouse strong suspicion in a man of ordinary care and prudence that he had witnessed an illicit purchase, sale, and delivery of narcotics. It is difficult to imagine what further visual evidence of a street sale of narcotics could be required to establish reasonable cause for an arrest, for here the officer observed each element in the sale carried out before his eyes. Of course, it is possible that on close examination the subject-matter of the sale might turn out to be something other than contraband—as for example, alfalfa grass, catnip, pipe tobacco, balsam needles, or aromatic herbs. But reasonable cause for arrest requires probabilities only, not certainties, and the circumstances at bench made it highly unlikely that the waxed paper package contained anything other than contraband, for non-contraband items in waxed paper bags are not normally exchanged for paper currency on street corners. The arrest, therefore, was based on reasonable cause, and the evidence obtained in the subsequent search and seizure was properly

admitted. (*People* v. *Lara*, 67 Cal.2d 365, 373 [62 Cal.Rptr. 586, 432 P.2d 202].)

■ Nor did the remarks of the trial court in the course of passing on the admissibility of the evidence affect the validity of its determination to admit the evidence, for in measuring the correctness of a trial court's rulings we look to what the trial court did, not to what it said. (*People* v. *Simmons*, 19 Cal.App.3d 960, 964 [97 Cal.Rptr. 283]; *People* v. *Grana*, 1 Cal.2d 565, 571 [36 P.2d 375].)

The judgment (order granting probation) is affirmed.

Herndon, J., concurred.

**ROTH, P. J.**—I dissent.

The majority decision holds that a sale on a street in broad daylight of an item in a plastic baggie or waxed paper for currency is not usually made and therefore provokes not alone suspicion but is sufficient to inspire in the mind of a seasoned narcotics officer who admitted he didn't know what the bag contained not only suspicion but probable cause to arrest and search the buyer for contraband. (Cf. *People* v. *Henze*, 253 Cal.App.2d 986 [61 Cal.Rptr. 545], hg. den.)

The trial judge frankly euphemized a distinction between the facts at bench from those in *Cunha* v. *Superior Court*, 2 Cal.3d 352 [85 Cal.Rptr. 160, 466 P.2d 704] and *Remers* v. *Superior Court*, 2 Cal.3d 659 [87 Cal.Rptr. 202, 470 P.2d 11]. He said in pertinent part:

"And yet this case seems to fall pretty squarely into the somewhat ivory tower reasoning of *Cunha* and *Remers*. . . . It is a street transaction. . . .

"I have to distinguish the cases. This has to do with a plastic baggie, and the other ones didn't. . . ."

The facts in *Cunha* and *Remers* involved street transactions observed by seasoned narcotic officers, but unlike the transaction at bench the sales in *Cunha* and *Remers* were in a high narcotic area and the *Remers* transaction involved a visible tinfoil package and was in the nighttime participated in by a person known to the officer to be a trafficker in drugs; although at bench the officer made no claim he recognized either party to the transaction and admitted he did not know what was in the package and could not be certain what the package contained. In addition, in both *Cunha* and *Remers*, there was furtive and suspicious conduct of the parties to the transaction and at bench the record shows no such conduct.

In *Thomas* v. *Superior Court,* 22 Cal.App.3d 972, 977-978 [99 Cal. Rptr. 647], hearing denied, the court in grappling with *Cunha* and *Remers,* cited previous decisions holding that the nature of the suspect package (tinfoil wrap, paper sack, small paper packets customarily used for narcotics) is not ground for the warrantless arrest of its possessor. In *People* v. *Conley,* 21 Cal.App.3d 894, 899 [98 Cal.Rptr. 869], hearing denied, the court stated that "In *Cunha, supra,* no probable cause for a search existed where the defendants in a known narcotics area merely looked around suspiciously and then exchanged an unseen object *for money.*" (Italics added.)

I, and I suspect others, have difficulty in absorbing the sensitive and often puzzling and evanecent factual distinctions and applying the legal requirements in respect of arrest and search and seizure. I am in sympathy with any effort to articulate a realistic workable rule. No such rule will be arrived at, however, if trial courts and intermediate appellate courts avoid application of a fixed rule on the theory that it offends common sense by making illusive factual distinctions to identical situations. There are undoubtedly physical differences between twins identical in all respects not apparent to the usual observer, but clear to a parent. In all the cases discussed herein, as well as the one at bench, the observer was an expert.

It may be, as it has been noted, that both *Cunha* and *Remers* should be re-examined. Until that time, however, I am impelled to conclude that an exchange in broad daylight between parties unknown to the officers, in a non-narcotic area, in a setting which was neither furtive nor pregnant with the knowledge of prior narcotics traffic on the part of either person to the exchange, of a package which admittedly after a search could have revealed non-contraband, cannot, under the controlling law, constitute probable cause for an arrest and search.

I would reverse the judgment.

Appellant's petition for a hearing by the Supreme Court was denied February 14, 1973. Tobriner, J., and Sullivan, J., were of the opinion that the petition should be granted.