[Crim. No. 8322. Fourth Dist., Div. One. Nov. 23, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
APRIL DAWN KNISELY, Defendant and Appellant.

**COUNSEL**

Appellate Defenders, Inc., under appointment by the Court of Appeal, and Stephen J. Perrello, Jr., for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Karl J. Phaler and John W. Carney, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION.**

COUGHLIN, J.*—Defendant, April Knisely, appeals her conviction of possession of a controlled substance for sale, i.e., L.S.D., a violation of Health and Safety Code section 11378.

Defendant entered a plea of guilty after denial of a motion to suppress evidence, i.e., L.S.D. she allegedly sold to a man and L.S.D. found in a police car under circumstances supporting the conclusion it belonged to her.

On appeal, as in the trial court, defendant contends the evidence she sought to suppress was the product of an unlawful search and seizure.

The motion was heard on a reporter's transcript of the preliminary hearing.

On September 17, 1975, at about 5 p.m., Officers Gonzales and Nelson[1] went to the Ocean Beach pier, an area known to them as the location of narcotics operations, where Gonzales had participated in approximately 100 narcotics-related arrests; stationed themselves at the top of the pier behind a wall overlooking the walkway below; were hidden from view except for their heads; and instituted surveillance of the walkway. Within 30 to 60 seconds Gonzales observed a man standing next to and facing a woman, the defendant, whose back was to the officers. The man was counting out money, consisting of "bills," which he handed to defendant. The latter counted the money and placed it in her left front pants pocket. Gonzales "couldn't tell the denominations . . . couldn't see what size bills," and did not know how many bills the man handed defendant. Defendant then handed the man something "very small" which he "carefully" placed in a cigarette package taken from his shirt pocket. The object was so small the officer "couldn't see what it was." The man returned the cigarette package to his shirt pocket. While making the change defendant and the man were looking around "as if to see if anybody was watching." They parted and walked away from each other. Officer Nelson volunteered to watch the

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]Gonzales testified at the preliminary hearing. Nelson did not testify.

man; went down a stairway; and contacted him. Gonzales went down another stairway to contact "the female," i.e., the defendant, and was 30 or 40 feet from Nelson when the latter contacted the man. Gonzales testified, "Nelson arrested him [the man] and read him his rights per *Miranda*. He asked him what transpired, and went into the guy's shirt pocket and retrieved the package of cigarettes." Gonzales testified he was observing Nelson as the latter "went through these steps." As Gonzales came down the stairs the defendant saw him, turned quickly around and started walking quickly away. He pursued her, walking "quickly"; stopped her; asked her to "step back to the stairs" and accompanied her to the place where Nelson and the man were located. Nelson then told him, i.e., Gonzales, the items in the cigarette package were "acid," which is the street name for L.S.D.; and the man "had bought these from the female." Gonzales then arrested defendant and caused her to be searched. She had $617.02, including four one-dollar bills in her left front pocket. Both suspects were placed in a police car and taken to the police station.

The issue on appeal, as it was at the hearing on the motion to suppress, is whether Officer Nelson had probable cause to arrest and search the man who participated in the transaction with defendant, which the officers observed.

The issue is not whether Nelson had probable cause to stop the man and interrogate him as an investigatory procedure. Nelson arrested the man; gave him a *Miranda* warning; then asked him what had transpired; and removed the cigarette case from his pocket.

In the lower court defendant contended, and on appeal now contends, the issue is determined by the decision in *Cunha* v. *Superior Court,* 2 Cal.3d, 352 [85 Cal.Rptr. 160, 466 P.2d 704], holding an arrest under circumstances substantially identical to those at bench was without probable cause.

The judge of the lower court concluded *Cunha* did not control because the circumstances in that case differed materially from those in the case at bench; denied the motion to suppress; but stated, "I will say it is a very close case, however."

 We believe the circumstances at bench are not distinguishable from those in *Cunha* and, although sympathetic with the position of the lower court, are compelled to conclude denial of the motion was error.

We compare the circumstances at bench with those in *Cunha.*

(1) In both cases the area in which the transaction took place was described by the officers making the arrest, in the words used by the court in *Cunha,* as an area known for frequent narcotics traffic. In *Cunha* one of the officers had participated in 15 to 20 narcotics arrests in the area in 3 months; and the other officer had participated in 30 to 40 arrests in 6 months. In the case at bench Gonzales participated in "approximately a hundred narcotics arrests" but when or over what period of time these arrests occurred does not appear. In neither case was there any testimony as to how many of the arrests resulted in convictions. In *Cunha* the court said, "Some of the dangers of according officers' views of a location's crime rate substantial weight in estimating the validity of a given intrusion upon a citizen's personal security are suggested by the record before us . . . [a]nd in the absence of any evidence in the record as to how many of those arrests actually vindicated the officers' suspicions, it is impossible to determine how accurate their estimate of the local narcotics traffic was. In short, giving substantial weight to the perceived crime rate of an area may constitute a self-fulfilling prophecy." (*Cunha* v. *Superior Court, supra,* 2 Cal.3d 352, 357 fn. 1; cf. *People* v. *Maltz,* 14 Cal.App.3d 381, 391 [92 Cal.Rptr. 216].) In neither case did the officers testify the previous arrests they had made followed transactions similar to those in the cases on appeal (cf. *People* v. *Maltz, supra,* 14 Cal.App.3d 381, 393).

(2) In both of the cases the defendant, "in broad daylight," had engaged in a transaction, described in *Cunha* as "some sort of transaction," between two people involving the exchange between them of money and an object. In *Cunha* one of the officers testified the suspects "appeared" to exchange what "appeared" to be an object for what "appeared" to be money. In the case at bench Gonzales saw the man count out and give some "bills" to defendant, following which defendant gave the man a small object. In each case the officers were entitled to believe a purchase and sale transaction had occurred between the suspects. There is no material difference in the circumstances, in *Cunha* and the case at bench, respecting the existence of such a transaction. In the case at bench the trial court said the officers observed the defendant

counting dollar bills. Gonzales testified he "couldn't tell" the denomination of the bills counted by defendant or the man. The evidence showed that after the defendant was arrested the officers found dollar bills in her pocket. What the officers learned after the arrests, of course, is not a basis for probable cause to arrest.

(3) In both cases the suspects were under surveillance and looked around at the time the transaction occurred. In *Cunha* the suspects were under surveillance, also, before the transaction occurred and during this time were " 'looking around . . . [l]ooking back and to the side as to see if anyone was watching'." (*Cunha v. Superior Court, supra,* 2 Cal.3d 352, 355.) As to the circumstance at bench, the trial court said: "They [the man and the defendant] are apparently together and they are looking over their shoulders, which by and of itself is as consistent with innocence as with a suspicious transaction taking place." With respect to such circumstances the court in *Cunha* said, " . . . an area known to be the site of frequent narcotics traffic should not be deemed to convert circumstances as innocent as an apparent transaction by pedestrians who seem generally concerned with their surroundings into sufficient cause to arrest those pedestrians. Transactions conducted by pedestrians are not per se illegal, and the participants' apparent concern with privacy does not imply guilt." (*Cunha v. Superior Court, supra,* 2 Cal.3d 352, 357.)

(4) In the case at bench, as in *Cunha,* the officers could not hear what the suspects engaged in the street transactions were saying. What expertise the officers might have had respecting the jargon of the narcotics trade was not a circumstance justifying their suspicion the transaction involved narcotics (see *Cunha v. Superior Court, supra,* 2 Cal.3d 352, 358). The fact Officer Nelson, after arresting the man and taking the cigarette package from him, referred to the items in the packet and said, " 'it's acid', which is the street name for L.S.D.," has no relationship to the circumstances preceding the arrest as a basis for probable cause.

(5) In both cases the officers could not identify the object which was the apparent subject of the transaction. In *Cunha* the officers did not see the object. In the case at bench they saw the object but were able to describe it only as "something that was very small." Gonzales testified, "It was so small I couldn't see what it was from where we were." Contrary to the situation in *People v. Garrett,* 29 Cal.App.3d 535, 537, 538, 539 [104 Cal.Rptr. 829], cited by the Attorney General, the object in

the case at bench was not identified as being packaged in the manner narcotics, to the officer's knowledge, are commonly packaged for sale. ,,

However, in the case at bench the officers saw the man place the object he received from defendant in a cigarette package. In *Cunha* it was not shown what the recipient of the package did with it upon its receipt. In the case at bench the trial court stated: " . . . while the type of package isn't distinctive, I think you have to agree that the manner in which the item was handled by the suspect was distinctive. If it were an address or telephone number or a piece of paper with information on it, you would normally expect it to be placed in a wallet or something of that nature. I think it would be highly unusual and would be consistent with reasonable suspicions that perhaps there is a narcotics transaction going down for this small item to be placed in the cigarette box or cigarette package. . . .

". . . . . . . . . . . . . . . . . . . .

" . . . You also have the item which was seen, but not seen so as to be able to identify it, being placed in a highly distinctive and unusual type of container, which would be consistent with attempting to conceal it."

In *Remers v. Superior Court,* 2 Cal.3d 659, 664 [87 Cal.Rptr. 202, 470 P.2d 11], the court said: "Where the events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful [citations]; a fortiori, an arrest and search based on events as consistent with innocent activity as with criminal activity are unlawful." (See also *People v. Martin,* 9 Cal.3d 687, 692 [108 Cal.Rptr. 809, 511 P.2d 1161].)

In *Remers,* a sidewalk suspect showed a companion a tinfoil package. The officers observing such were not able to see the contents of the package or any impressions on the tinfoil wrapping. An unlawful search revealed the package contained seconal tablets. Addressing its attention to the circumstance the package was wrapped in tinfoil, the court said: "The People's reliance on the special knowledge and experience of the arresting officers is as misplaced as it was in *Cunha.* The People rely on the officers' knowledge that dangerous drugs are often packaged in tinfoil. However, even if dangerous drugs are often packaged in tinfoil, so many other, legitimate items—such as foods or tobacco—are packaged in tinfoil that a tinfoil package is not a suspicious circumstance, and

a man of reasonable caution who possesses the knowledge that dangerous drugs are often packaged in tinfoil would not be justified in assuming, upon seeing a tinfoil package, that it is likely to contain drugs," and, "[i]t is thus clear that in itself a tinfoil package is so commonly used for legitimate purposes that it is not a suspicious circumstance; as we have seen, Officer McCarthy himself admitted that as far as he knew the package could have contained cookies." (*Remers* v. *Superior Court, supra,* 2 Cal.3d 659, 666.)

Gonzales did not testify the fact the small article was placed in a cigarette package was a suspicious circumstance, and if so, why. A cigarette package furnishes a hiding place for any small valuable object, such as a ring or similar piece of jewelry, in possession of a person walking the streets of a high-crime-rate area. The purpose of the hiding may be to avert theft, as well as detection by police officers. Such a purpose is as consistent with innocent as with criminal activity. The evidence does not show it is a practice among narcotics users to hide or store their narcotics in a cigarette package, nor is there other evidence showing the use of a cigarette package in which to hide or store a small object is more reasonably related to criminal activity than to innocent activity (see *People* v. *Conley,* 21 Cal.App.3d 894, 899 [98 Cal.Rptr. 869]).

(6) In *Cunha* the officers observed the suspects for three or four minutes after the suspected sale before proceeding to contact them; upon contact inquired whether they had been dealing; and within 15 to 20 seconds arrested them. In the case at bench the whole transaction between the man and the defendant took only 30 to 45 seconds; the officers did not observe the suspects before the suspected sale, and did not observe them after the sale took place before proceeding to contact them; after the sale, immediately left their hiding place, and went to the sidewalk by different stair routes; Nelson immediately contacted the man and arrested him forthwith; and Gonzales pursued the defendant, who was walking away, brought her to the stairs, and arrested her when told by Nelson the object passing in the transaction was acid and the man had purchased it from her. This information was a product of the man's arrest.

The trial court noted, as one of the circumstances supporting probable cause: "And when the defendant and the suspect are initially confronted by the officers, they walk away in a hurried manner." Officer Gonzales testified, "Officer Nelson contacted the male subject who was walking

away, and as I came down the stairs, the defendant saw me, turned quickly around, started walking quickly away from the scene." Gonzales also testified he did not see Nelson make the "initial contact" with the man; he had lost sight of Nelson for a few seconds because they had gone down from the pier by different stairways; and he saw Nelson and the man just after Nelson had stopped the man and was ordering the man's arrest. There was no evidence, direct or by inference, the man was walking away from Nelson at the time of the contact, the man saw Nelson and started to walk away, or that the man was fleeing from Nelson. To the contrary, the evidence shows the man was walking up the stairway toward Nelson when he was stopped. Whether the defendant walked away from Gonzales after she saw him does not provide a circumstance supporting probable cause to arrest the man because at the time the defendant was walking away from Gonzales the man already had been arrested.

The decision in *Cunha* was held inapplicable to the situations in *People* v. *Mendez,* 35 Cal.App.3d 606, 608, 609 [110 Cal.Rptr. 894]; *People* v. *Garrett, supra,* 29 Cal.App.3d 535, 537, 538; and *People* v. *Maltz, supra,* 14 Cal.App.3d 381, 391-393, which distinguished the circumstances in those cases from the circumstances in *Cunha.* However, none of the material distinguishing circumstances in those cases is present in the case at bench.

█ Although it has been suggested the decision in *Cunha* should be reexamined, the reexamination must be by the Supreme Court.[2] Lower courts are bound by the decision in *Cunha* until it is overruled (*Auto Equity Sales, Inc.* v. *Superior Court,* 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937]).

In the opinion of this court the distinguishing circumstances relied upon by the trial court in reaching a conclusion contrary to the decision in *Cunha,* are nonexistent or insignificant. As noted by the trial court, "I think we are probably in an area in this particular factual setting where you could find various judges taking different positions with regard to

[2]In *Remers* v. *Superior Court,* 2 Cal.3d 659, 669 [87 Cal.Rptr. 202, 470 P.2d 11], Chief Justice Wright, in his concurring opinion, stated: "I concur in the order under the compulsion of *Cunha* v. *Superior Court* . . . which decision in my opinion should be reexamined."

In *People* v. *Conley,* 21 Cal.App.3d 894, 889 [98 Cal.Rptr. 869], the court cited *Cunha* in support of some of the reasons for its decision, while in *People* v. *Garrett,* 29 Cal.App.3d 535, 540 [104 Cal.Rptr. 829], the dissenting opinion is premised on *Cunha,* and in each case a petition for hearing by the Supreme Court was denied.

how they feel about the evidence, whether in their good judgment it would be sufficient to afford probable cause or not. But I think each factual situation is determinative of the individual case." Nevertheless, where the Supreme Court has established the insufficiency of specific circumstances to support a finding of probable cause, its ruling is determinative. ▮ We conclude as a matter of law Nelson's arrest of the man suspect was without probable cause and illegal. The defendant has the right to assert this illegality (*Kaplan* v. *Superior Court,* 6 Cal.3d 150, 157, 161 [98 Cal.Rptr. 649, 491 P.2d 1]). Defendant's arrest also was illegal as it was the product of information produced by the man's illegal arrest and search (*Wong Sun* v. *United States,* 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407]; *People* v. *Superior Court (Casebeer),* 71 Cal.2d 265, 269-274 [78 Cal.Rptr. 210, 455 P.2d 146]).

The foregoing conclusions are determinative of the appeal and for this reason other contentions by defendant need not be considered.

The evidence defendant sought to suppress was the product of unlawful searches and seizures, and denial of the motion to suppress was error.

The judgment is reversed.

Ault, Acting P. J., and Cologne, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 19, 1977.