[No. F003659. Fifth Dist. July 16, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT DEAN STANFILL, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rule 976.1, it is ordered that the opinion be certified for partial publication, as to part III only, in the Official Reports.

†Assigned by the Chairperson of the Judicial Council.

COUNSEL

Janette L. Tom, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Jane N. Kirkland and Esteban Hernandez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**IVEY, J.\*—**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .†

## III.

APPELLANT WAS NOT DENIED EFFECTIVE ASSISTANCE OF COUNSEL BY VIRTUE OF COUNSEL'S FAILURE TO CHALLENGE APPELLANT'S ARREST AS MADE WITHOUT PROBABLE CAUSE

Appellant contends he was deprived of effective assistance of counsel because counsel failed to advance a motion to set aside the information pursuant to Penal Code section 995.

Appellant argues that there was insufficient reasonable cause to arrest and therefore a Penal Code section 995 motion to set aside the information likely would have succeeded. Appellant further contends there was no conceivable tactical purpose for counsel's failure to challenge the arrest. Respondent argues there was a satisfactory tactical purpose for counsel's failure to make a Penal Code section 995 motion[6] and, in any event, it was unlikely such a motion would be successful.

■ Notwithstanding respondent's suggestion, we can conceive of no solid tactical reason for failing to bring a Penal Code section 995 motion, if the motion is supported by the facts. Therefore, the only acceptable reason for counsel's failure to move to set aside the information is that such a motion would be unsupported by the facts and therefore unlikely to succeed; and our focus turns to whether appellant's arrest for the sale of marijuana was without reasonable cause. ■ " 'To constitute probable cause for arrest, a state of facts must be known to the officer that would lead a man of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person arrested is guilty.' [Citation.] As with any intrusion upon an individual's personal security, 'simply " 'good faith on the part of the arresting officer is not enough,' " ' and 'in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' his suspicion. [Citations.]

---

\*Assigned by the Chairperson of the Judicial Council.

†See footnote, *ante*, page 420.

[6]Respondent suggests a tactical reason for appellant's counsel's failure to make a Penal Code section 995 motion was his decision to take a nothing-to-hide approach to the case.

"Where the events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful [citations]; a fortiori, an arrest and search based on events as consistent with innocent activity as with criminal activity are unlawful." (*Remers* v. *Superior Court* (1970) 2 Cal.3d 659, 664 [87 Cal.Rptr. 202, 470 P.2d 11].)

■ In assessing the reasonableness of an officer's conduct the court will give considerable weight to the officer's particular expertise gained through on-the-job experience. (*People* v. *Gale* (1973) 9 Cal.3d 788, 795-796 [108 Cal.Rptr. 852, 511 P.2d 1204].) The test is whether the circumstances would warrant a reasonable person who possessed such expertise to believe that there existed probable cause to arrest. (*Cunha* v. *Superior Court* (1970) 2 Cal.3d 352, 358 [85 Cal.Rptr. 160, 466 P.2d 704].) There is no exact formula for determining whether there is probable cause; "[e]ach case must be decided on its own facts and circumstances . . . ." (*People* v. *Ingle* (1960) 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].)

■ The suspicious facts known to the officers at the time of the arrest were: appellant was observed in a park area where the police were aware sales of marijuana took place; appellant was sitting in the park, apparently doing nothing, when Holt, an apparent stranger, drove up, got out of his car, walked up to appellant, and gave him at least $1 in exchange for two small, thin, white, filterless cigarettes; and the whole transaction took less than three minutes from the time Holt left his car until he drove away.

As a preliminary matter, it should be noted that none of these facts in isolation are sufficient to constitute probable cause. (See, e.g., *Thomas* v. *Superior Court* (1972) 22 Cal.App.3d 972, 977 [99 Cal.Rptr. 647] [mere possession of white, hand-rolled cigarettes not probable cause for arrest or search]; *Remers* v. *Superior Court, supra,* 2 Cal.3d at pp. 664-665 [fact officers' observations occurred in a known area of narcotic sales cannot convert circumstances that are as consistent with innocent activity as with criminal activity into sufficient cause to arrest]; *Cunha* v. *Superior Court, supra,* 2 Cal.3d at p. 357 [exchange of an object for money does not necessarily justify suspicions that criminal activity is afoot].) However, in determining whether probable cause exists "[e]ach case must be decided on its own facts and circumstances [citations] and on the total atmosphere of the case [citations]." (*People* v. *Ingle, supra,* 53 Cal.2d at p. 412.)

A number of cases have addressed the issue of probable cause under circumstances similar to those at bench.

*Cunha* v. *Superior Court, supra,* 2 Cal.3d 352 involved a narcotics arrest made in a known narcotics area by two officers after they observed "some sort of transaction" between two people involving "the sale" of what "appeared" to be an object for what "appeared" to be money. The suspect had

been under surveillance and the officers observed the suspect "looking around" before the "transaction" occurred. The officers testified that they had participated in numerous narcotics arrests in the area. The California Supreme Court found insufficient specific and articulable facts to constitute probable cause to arrest. The court held that a high crime rate area cannot convert innocent circumstances into sufficient cause; that neither the petitioner's activities nor the location of his arrest provided probable cause for arrest; that transactions conducted by pedestrians are not per se illegal; and that the participants' apparent concern for privacy did not imply guilt. (*Id.*, at p. 357.)

Shortly after the decision in *Cunha,* the California Supreme Court decided *Remers* v. *Superior Court, supra,* 2 Cal.3d 659. *Remers* involved an arrest made by the same officers as in *Cunha,* in the same general location, and on the day after the arrests in *Cunha.* In *Remers* a suspect showed a companion a tinfoil package. The officers were unable to see the contents of the package or any impressions in the foil wrapping. The court held the circumstances in *Remers* to provide even less justification for arrest than did the circumstances held insufficient to validate the arrests in *Cunha.* "The act of showing a tinfoil package to a companion is even less suspicious than that of engaging in a sidewalk sale. . . . [F]or all [the officers] knew at the time [they] approached petitioner, the tinfoil package could have contained cookies. Petitioner exhibited less concern with her surroundings than did the suspects in *Cunha;* and her apparent concern was consistent with innocent activity—such as keeping an eye out for acquaintances." (*Remers* v. *Superior Court, supra,* 2 Cal.3d at p. 665.)

In *People* v. *Knisely* (1976) 64 Cal.App.3d 110 [134 Cal.Rptr. 269], the court was presented with facts substantially similar to those in *Cunha* and *Remers,* except the arresting officer unequivocally observed the exchange of money for an object as opposed to the exchange of what "appeared" to be money for what "appeared" to be an object in *Cunha.* The court gave no deference to this distinguishing circumstance and held: "In each case the officers were entitled to believe a purchase and sale transaction had occurred between the suspects. There is no material difference in the circumstances, in *Cunha* and the case at bench, respecting the existence of such a transaction." (*People* v. *Knisely, supra,* 64 Cal.App.3d at p. 114.)

On the other hand, an officer's observations of the exchange of money for an *identifiable* object played a significant role in the finding of reasonable cause for arrest on a narcotics charge in *People* v. *Garrett* (1972) 29 Cal.App.3d 535 [104 Cal.Rptr. 829].

In *Garrett,* the commander of the local vice and narcotics bureau, who had participated in approximately 500 narcotics arrests, observed the defendant leaning against a chain link fence at a local high school. He was

approached by a young male and, after a brief conversation, the defendant handed the other male "some type of paper currency . . . green in color," and received in return a package, five inches long, approximately an inch and a half to two inches wide; it appeared to be flat and wrapped in wax paper. The defendant accepted the package and pocketed it. He was arrested and searched. The package was found to contain marijuana and the defendant was convicted of possession of marijuana. The police officer testified in his experience marijuana was normally packaged in wax paper bags and sold to young people in $5 and $10 quantities. The officer's experience, observation of the sale, and knowledge of the size and appearance of marijuana packaged for sale in small quantities were deemed sufficient to provide the officer with probable cause to believe a public offense had been committed. (*Id.*, at pp. 538-539.)

The court in *Garrett* distinguished its situation from those in *Cunha* and *Remers*, noting that the officer's observations differed sharply in degree of specificity from the observations of the officers in those cases. "In *Cunha* only an apparent transaction was seen, one involving apparent money in an apparent exchange for an unseen object. In *Remers* a suspicious package was observed, but neither money nor merchandise was seen to change hands. In contrast [the officer here] observed all the elements of a completed sale—preliminary negotiation, a delivery of paper currency, and a reciprocal delivery of a suspicious package, specifically, a waxed paper package of a type known to him to be commonly used for marijuana sales." (*Id.*, at pp. 538-539.) The court in *Garrett* concluded "In our view the circumstances at bench would arouse strong suspicion in a man of ordinary care and prudence that he had witnessed an illicit purchase, sale, and delivery of narcotics. It is difficult to imagine what further visual evidence of a street sale of narcotics could be required to establish reasonable cause for an arrest, for here the officer observed each element in the sale carried out before his eyes. Of course, it is possible that on close examination the subject-matter of the sale might turn out to be something other than contraband—as for example, alfalfa grass, catnip, pipe tobacco, balsam needles, or aromatic herbs. But reasonable cause for arrest requires probabilities only, not certainties, and the circumstances at bench made it highly unlikely that the waxed paper package contained anything other than contraband, for non-contraband items in waxed paper bags are not normally exchanged for paper currency on street corners. The arrest, therefore, was based on reasonable cause . . . ." (*Id.*, at p. 539.)

Appellant seeks to distinguish *Garrett* on two grounds: Officer Stockham's failure to provide a testimonial comparison between hand-rolled tobacco cigarettes and marijuana cigarettes; and the prosecution's failure to introduce foundational evidence of Officer Stockham's experience with narcotics sufficient to lend credence to the accuracy of his observation that the cigarettes contained marijuana.

The failure of an officer to give a testimonial comparison between marijuana cigarettes and hand-rolled tobacco cigarettes was criticized in *Thomas v. Superior Court, supra,* 22 Cal.App.3d 972. In that case, however, there was a total absence of evidence—other than the appearance of the cigarettes themselves—to constitute reasonable cause; the court appeared to concede that additional suspicious circumstances might have justified the officer's conclusion. (*Id.,* at p. 977.) Furthermore, one does not have to be an experienced narcotics officer to be aware that marijuana commonly is hand-rolled in white cigarette paper.

Officer Stockham observed all the elements of a completed sale and was able to articulate specific facts regarding the transaction. In view of all of the circumstances, Stockham's assumption that the cigarettes contained marijuana was reasonable, more than mere conjecture, and satisfied the probability test set forth in *Garrett.*

It is not "reasonably probable" that a determination more favorable to defendant would have resulted even if defense counsel had moved to set aside the information pursuant to Penal Code section 995. Looking to the "total atmosphere" of the case (*People* v. *Poole* (1975) 48 Cal.App.3d 881, 888 [122 Cal.Rptr. 887]), Stockham had reasonable cause to believe that he had just witnessed the sale of marijuana.[7]

IV.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

The judgment is affirmed.

Woolpert, Acting P. J., and Martin, J., concurred.

---

[7]The totality of the circumstances also distinguishes the case at bench from the recent case of *People* v. *Huntsman* (1984) 152 Cal.App.3d 1073 [200 Cal.Rptr. 89]. In *Huntsman,* a police officer arrested the defendant after observing him and another man facing a vehicle's open trunk, with defendant holding a plastic "Zip-Loc" bag. The officer was unable to identify the contents of the bag and did not observe the exchange of an object for money. The court reversed appellant's conviction based on the absence of a foundation linking the ubiquitous plastic bag to an unlawful purpose and the officer's failure to testify to any expertise in determining when plastic bags may contain contraband or any experience that such bags are often used in transactions involving narcotics or stolen property. (*Id.,* at pp. 1083-1084.) It is common knowledge that marijuana often is rolled and sold in white cigarette paper.

*See footnote, *ante,* page 420.