Filed 10/17/13  P. v. Spicer CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br> Plaintiff and Respondent,<br><br>v.<br><br>LENNIE RAMON SPICER,<br><br> Defendant and Appellant. | A136725<br><br>(San Francisco City & County<br> Super. Ct. No. 218151) |

After a jury trial, defendant Lennie Ramon Spicer was convicted of misdemeanor resisting, obstructing, or delaying a peace officer (Pen. Code, § 148, subd. (a)(1)),[1] and was found not guilty on two felony counts of threatening an executive officer (§ 69). Defendant appeals his conviction and asserts that an element of section 148, subdivision (a)(1) is that the delay or resistance was done while the officer was acting lawfully. Defendant maintains the officer was unlawfully attempting to arrest him when defendant walked away because the evidence, according to defendant, does not support probable cause to arrest.  (See § 836.)  He thus claims that his due process rights were violated because insufficient evidence supports his conviction.  We conclude that the record supports a finding of probable cause to arrest and affirm the judgment.

### BACKGROUND

On June 22, 2012, an information was filed charging defendant with one felony count of making a criminal threat (§ 422), one felony count of threatening an executive

_____

[1] All further unspecified code section references are to the Penal Code.

officer (§ 69), and one misdemeanor count of resisting, obstructing, or delaying a peace officer (§ 148, subd. (a)(1)). The information further alleged a prior conviction within the meaning of the Three Strikes Law (§§ 667, subds. (d)-(e), 1170.2, subds. (b)-(c)), and a five-year prior serious felony conviction enhancement (§ 667, subd. (a)(1)).

Defendant filed a motion to suppress evidence, which the trial court denied on August 21, 2012. Defendant also filed a motion to set aside the two felony counts charged in the information. On August 22, 2012, the court granted defendant's motion to set aside the threatening an executive officer count (§ 69). Subsequently, on August 27, 2012, the court granted the prosecutor's motion to amend the information to add a second felony count of making a criminal threat (§ 422).

The jury trial began on August 28, 2012.[2] Officer Daniel Taft testified that the incident involving defendant occurred on April 21, 2012, when Taft was patrolling the Tenderloin neighborhood in San Francisco on bicycle and in uniform. Prior to this incident, Taft estimated that he had been involved in a minimum of 50 narcotics investigations during his four and one-half years on the police force. He noted that the Tenderloin was known for low-level narcotics sales, such as crack cocaine. A different area, known as "Pill Hill" near Golden Gate and Leavenworth, was known for transactions involving Vicodin, OxyContin, and Hydrocodone.

Officer Taft stated that he was riding his bicycle on the sidewalk at the southeast corner of Turk and Taylor in the Tenderloin and, when he "rounded the corner," he spotted defendant and another man. The two men were about 10 feet in front of him on the sidewalk. He observed that defendant "had a small orange prescription bottle in one of his hands." The officer saw defendant remove from the bottle "what appeared to be a small white pill" and hand it to the other man. Based on his training and experience, Taft suspected that he "just witnessed a street-level narcotics transaction." He did not see any money exchanged between the two men. When questioned about how he was to respond to witnessing a suspected narcotics transaction on the street, Taft answered: "Well, we're

_____

[2] Only those facts relevant to the conviction are set forth.

2

supposed to arrest them." When asked whether he attempted to arrest defendant and the other man, Taft replied, "Yes."

Taft told both men to stop. The other man showed the officer the pill defendant had given him. Taft commanded the two men to turn around and face the parking lot's retaining wall to permit him to handcuff both men from behind. The other man followed Taft's directive, and placed his hands behind his back. Defendant, according to Taft, "lifted his hand up, shook it down in a dismissive manner, and just started walking away." Taft told defendant to stop about four or five times, but defendant continued to walk away from him. Taft advised the cooperative individual that if he remained at this location while Taft chased after defendant, Taft would return and obtain the necessary information from him and then release him without arresting him. After the man agreed, Taft ran after defendant, who was about 20 or 30 feet away.

As Taft chased after defendant, he yelled about three or for times for defendant to stop. He eventually caught up to defendant. Taft instructed defendant to put his hands behind his back and defendant complied; the officer handcuffed defendant. Taft told defendant that he was under arrest. Taft conducted a search of defendant and he took the pill bottle from defendant's right hand. The bottle contained one pill. Another officer arrived in a patrol car and transported defendant to the police station.

Defendant testified and stated that on April 21, 2012, he was smoking a cigarette with a stranger near the corner of Turk and Taylor. Defendant removed the pill bottle from his pocket and was going to take a pill to treat his arm pain when Officer Taft arrived on his bicycle. He maintained that the pill was Tylenol-codeine and he had a prescription for it to treat his swollen arm. He claimed that he told the officer: "This is a Tylenol-codeine pill I took and I have a prescription for it." He denied handing a pill to the person standing next to him.

Defendant stated that the officer approached the other man and began to talk to him. After approximately 30 to 45 seconds, defendant walked away because he believed Taft was interested in talking only to the other man. Subsequently, he heard someone yelling for him to stop and he stopped and waited for Taft to catch up to him.

3

After hearing two days of testimony, the jury returned its verdicts on August 31, 2012. The jury convicted defendant of the misdemeanor count of delaying a peace officer (§ 148, subd. (a)(1)), and found him not guilty of the two felony criminal threat counts.

On September 4, 2012, the trial court suspended imposition of sentence and placed defendant on three years of unsupervised probation. As a condition of probation, the court ordered defendant to serve 138 days in county jail with 138 days of credit for time served.

Defendant filed a timely notice of appeal.

## DISCUSSION

The jury convicted defendant of violating section 148, subdivision (a)(1). This statute provides: "Every person who willfully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment . . . shall be punished . . . ." (§ 148, subd. (a)(1).) Where, as here, the "statute makes it a crime to commit any act against a peace officer engaged in the performance of his or her duties, part of the corpus delicti of the offense is that the officer was acting lawfully at the time the offense was committed. [Citations.] Disputed facts relating to the question whether the officer was acting lawfully are for the jury to determine when such an offense is charged. [Citation.]" (*People v. Jenkins* (2000) 22 Cal.4th 900, 1020.)

Defendant acknowledges that the evidence supports a finding that he delayed the officer and that he knew Taft was a police officer. He also concedes that a detention would have been lawful because the record supports a finding that Officer Taft had reasonable suspicion to detain him. He maintains, however, that when the officer first told him to stop, it was an arrest, not a detention, because the officer testified that he was attempting to arrest defendant. He claims that the evidence in the record does not support a finding that the officer had probable cause to arrest him. Since a legal element of

4

violating section 148, subdivision (a)(1) is that the officer was acting lawfully, defendant claims that he could not be convicted of this crime.[3]

The People respond that the evidence supports a finding that Officer Taft had probable cause to arrest defendant. Furthermore, the People dispute defendant's assertion that Taft's subjective belief that he was going to arrest defendant transformed a detention into an arrest when Taft's subjective belief was never communicated to defendant prior to defendant's disobeying the command to stop. The People argue that Taft was detaining defendant when he commanded him to stop and defendant has conceded that a detention was legal.

As explained below, substantial evidence in the record supports a finding that Taft had probable cause to arrest defendant. We therefore need not address defendant's argument that an officer's subjective belief is relevant to determining whether a stop is a detention or an arrest for purposes of determining whether the officer was acting lawfully under state law.[4]

In evaluating the sufficiency of the evidence the standard of review is deferential, and " ' "the power of an appellate court begins and ends with the determination as to

---

[3] The jury was instructed as follows: "A peace officer is not lawfully performing his or her duties if he or she is unlawfully arresting or detaining someone or using unreasonable or excessive force in his or her duties." "The People have the burden of proving beyond a reasonable doubt that Daniel Taft was lawfully performing his duties as a peace officer. If the People have not met this burden, you must find the defendant not guilty of resisting arrest . . . ."

The court also gave the following instructions regarding probable cause: "A peace officer may legally arrest someone if he or she has probable cause to make the arrest. Any other arrest is unlawful." "Probable cause exists when the facts known to the arresting officer at the time of the arrest would persuade someone of reasonable caution that a person to be arrested has committed a crime." "In deciding whether the arrest was lawful, consider evidence of the officer's training and experience and all the circumstances known by the officer when he or she arrested the person."

[4] Defendant acknowledges that a police officer's "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." (*Whren v. United States* (1996) 517 U.S. 806, 813.) He claims, however, that subjective intent is relevant to a determination whether the officer was acting lawfully under state law (§ 836).

whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination . . . .” ’ [Citations.]” (*People v. Semaan* (2007) 42 Cal.4th 79, 88.) “In reviewing a criminal conviction challenged as lacking evidentiary support, the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence— that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. An appellate court must accept logical inferences the jury might have drawn from the evidence, even if the court would have concluded otherwise. [Citation.]” (*People v. Brady* (2010) 50 Cal.4th 547, 561.)

Section 836, subdivision (a)(1) provides that an officer may arrest an individual without a warrant when the officer “has probable cause to believe that the person to be arrested has committed a public offense in the officer’s presence.” Probable cause has been generally defined as a state of facts that “would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime.” (*People v. Ingle* (1960) 53 Cal.2d 407, 412.) “No exact formula tells us how to decide whether there was probable cause to arrest. Instead, we look to the totality of the surrounding circumstances and decide each case on its own facts, taking into account such things as (1) the officer’s experience (which may render suspicious that which appears innocent to a layman); (2) the officer’s prior contacts with the suspect; (3) the officer’s awareness that the area is one known for street drug transactions; (4) the defendant’s conduct (such as a covert or secretive display, transfer or exchange); (5) a caching of an object given or received in a peculiar receptacle designed for a different, specialized purpose; (6) some indication by the defendant of a consciousness of guilt; and so on.” (*People v. Guajardo* (1994) 23 Cal.App.4th 1738, 1742 (*Guajardo*).)

Here, the totality of the circumstances support the jury’s finding that Officer Taft had probable cause to arrest defendant for furnishing a prescription drug to another (Health & Saf. Code, § 11352). Taft had substantial experience with drug transactions;

6

he testified that he had been involved in at least 50 narcotic investigations. The area in the Tenderloin where the transaction occurred was known for drug sales.[5] Based on Taft's experience, he concluded that a drug transaction was occurring. Defendant and the other man were 10 feet away from Taft; Taft saw a small "orange prescription bottle" in defendant's hand. Taft observed defendant remove a small white pill from the bottle and give it to the other man. Defendant admitted to the officer that the pill he had given to the other man was Tylenol-codeine.

The present case is similar to the situation in *Guajardo*, *supra*, 23 Cal.App.4th 1738, where the appellate court concluded that the record supported a finding of probable cause to arrest. (*Id.* at pp. 1742-1743.) In *Guajardo,* the officer spotted the defendant handing a small object to his companion in an area known for a high rate of street drug transactions and his companion placed the object in a cigarette case, which he placed in his pocket. (*Id.* at p. 1743.) Additionally, the officer had arrested defendant a month earlier for the sale of narcotics. (*Ibid.*) In concluding that there was sufficient evidence to support probable cause to arrest, the court explained: "The question is not whether these facts would be sufficient to support a conviction, and the fact that there may be some room for doubt is immaterial." (*Ibid.*)

Here, Officer Taft had not arrested defendant previously for the sale of narcotics, but otherwise the facts are similar to those in *Guajardo*, *supra*, 23 Cal.App.4th 1738. The facts are somewhat stronger in the present case in the respect that the officer in *Guajardo* simply saw a small object, and did not see what the object was, while Taft saw that the object was a small white pill removed from a prescription pill bottle.

Defendant stresses that Officer Taft did not observe any exchange of money (see *People v. Garrett* (1972) 29 Cal.App.3d 535 [probable cause to arrest when police observed an exchange of paper money for a package of the size and type regularly used for the sale of marijuana in a location known for sales and use of marijuana]), or any furtive movements by defendant or the other person (see *Guajardo*, *supra*, 23

---

[5] Officer Taft testified that the Tenderloin was known more for sales involving crack cocaine than prescription pills.

7

Cal.App.4th at pp. 1741-1743). He also stresses that the officer had no information indicating that defendant or the other person had any history of drug use or trafficking (see *ibid.*) and had no information about the pill bottle or what the white pill was. (See *People v. Stanfill* (1985) 170 Cal.App.3d 420, 423, 426 [probable cause to arrest when police observed the defendant gave an apparent stranger money for two small, thin, white, filterless cigarettes in an area known to have marijuana sales].) Defendant argues that an "exchange of an unrecognizable object for money on a street in a high crime area does not justify arrest . . . ." (*People v. Limon* (1993) 17 Cal.App.4th 524, 532, 534-537 [where officer knew defendant's location was a site for drug activity, and the officer observed defendant make a hand-to-hand exchange and saw the defendant stash something in his pocket, a detention, if not an arrest, was justified]; see also *Cunha v. Superior Court* (1970) 2 Cal.3d 352, 357 [no probable cause where officers observed a hand-to-hand exchange in a known narcotics trafficking area but did not see what the object was and did not see money exchanged]; *Remers v. Superior Court* (1970) 2 Cal.3d 659, 665-666 [no probable cause when officer in an area known for narcotics sales saw a person remove a tinfoil package from her purse but officer could not see what was in the tinfoil and no money was exchanged]; *People v. Jones* (1991) 228 Cal.App.3d 519, 524 [no reasonable suspicions supporting a detention when officer had seen nothing more than a transfer of money between the defendant and another person].)

Here, although the officer did not see any exchange of money, Officer Taft was 10 feet away and clearly saw defendant remove the white pill from the prescription pill bottle and hand it to the other man; the white pill was not some unidentifiable object. Furthermore, defendant, according to his own testimony, announced that the pill was "Tylenol-codeine." Defendant attempts to discount his own testimony by asserting that it is unclear from the record whether he made this statement before or after the officer yelled, "Stop."[6] He also stresses that Taft did not testify that defendant made this

---

[6] When cross-examined, defendant was specifically asked: "But you told the officer when you *first saw him*, " 'It's only codeine,' right?" (Italics added.) Defendant responded, "I told him it was a Tylenol-codeine pill and it was prescribed to me."

8

statement to him.  We, however, are compelled to review the record in the light most favorable to the judgment below.  (See, e.g., *People v. Brady, supra,* 50 Cal.4th at p. 561.)  Thus, the proper inference is that defendant told the officer as soon as he saw him and before the officer said, "Stop," that the pill was Tylenol-codeine.

Although each individual fact may not show probable cause to arrest, the totality of the facts supports the jury's finding that the officer acted lawfully.  The officer saw defendant give a white pill to the other man and the moment defendant announced that the pill was codeine, Taft had probable cause to arrest defendant.  At that point, a person of ordinary prudence could entertain an honest and strong suspicion that defendant was unlawfully furnishing a prescription drug to the other man.

Accordingly, we conclude that the evidence supports a finding that defendant delayed the officer while the officer was lawfully attempting to arrest him and the record supports his conviction for violating section 148, subdivision (a)(1).

## DISPOSITION

The judgment is affirmed.

_____
Brick, J.*

We concur:

_____
Haerle, Acting P.J.

_____
Richman, J.

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9